METROPOLITAN ALLIANCE OF POLICE, ) Petition for review

BELLWOOD COMMAND CHAPTER NO. 339, )    of Decision and Order of

) the State of Illinois

Petitioner-Appellant, ) Labor Relations Board.   

) 

v. ) 

) No. S-RC-02-073

ILLINOIS LABOR RELATIONS BOARD, ) 

and THE VILLAGE OF BELLWOOD, ) 

) 

Respondents-Appellees. )

PRESIDING JUSTICE REID delivered the opinion of the court:

The petitioner, the Metropolitan Alliance of Police, Bellwood Command Chapter No. 339 (the Union), appeals from the State of Illinois Labor Relations Board (the Board) decision that dismissed its petition which sought to form a bargaining unit for sergeants and lieutenants who were employed by the Village of Bellwood police department (Department).  On appeal, 

the Union argues that the Board’s determination that these employees are supervisors pursuant to section 3(r) of the Illinois Public Labor Relations Act (5 ILCS 315/3(r) (West 2002)) is erroneous.  For the reasons that follow, we affirm the Board’s decision.

BACKGROUND

On March 13, 2002, the Union filed a representation/

certification petition with the Board pursuant to the Illinois Public Labor Relations Act (5 ILCS 315/1 
et
 
seq
. 
(West 2002)(the Act).  In its petition, the Union alleged that at least 30% of the sergeants and lieutenants employed by the Department were requesting a secret ballot election to determine whether the Union should be certified as their exclusive collective bargaining agent.  The Union alleged that there was no existing collective bargaining agreement covering these individuals.  Both parties subsequently waived the requirement contained in the Act that an election be held within 120 days of the filing of the petition.

In a letter dated March 22, 2002, Administrative Law Judge (ALJ) John Clifford of the Board informed the parties that he had determined that the Union had presented a sufficient showing of interest to proceed to an election.  ALJ Clifford noted in his letter that “[a]ssuming that the Village believes that some or all of the employees sought are supervisors or managers and hence excluded from any unit, we need at the pre-hearing conference to determine how both parties may efficiently present the facts to me for Board determination.”  Subsequently, a hearing was held.  

The sergeants and lieutenants at issue serve as shift watch commanders in the Village of Bellwood (the Village) patrol division.  The Village argued that these sergeants and lieutenants functioned as supervisors because they exercised the requisite independent judgment necessary to be deemed supervisors under the Act and, as such, were not able to form a bargaining unit.

The Village is a municipality located in Cook County’s western suburbs.  The Department contains approximately 48 sworn police officers.  Chief Gregory Moore is the principal commander of the Department.  Deputy Chief Tom Bajkowski serves directly below Chief Moore.  Below the deputy chief are three division commanders.  Bajkowski also serves as one of the Department’s four division commanders.  These division commanders each hold the rank of sergeant.  There are two lieutenants and five patrol sergeants.  The remainder of the officers are patrol officers and part-time personnel.

The deputy chief is the division commander of the patrol division, which is also known as the operations division.  The Patrol Division is responsible for patrolling the Village.  There are three eight-hour shifts in the Patrol Division.  A watch commander is in charge of each shift.  Two lieutenants and five sergeants work in the patrol division.  If a lieutenant is working on a particular shift, he functions as the watch commander.  If no lieutenant is working on a particular shift, the sergeant working on that shift with the most seniority functions as the watch commander.  When sergeants in the patrol division are not functioning as watch commanders, they function as patrol sergeants.  The sergeant with the least seniority is not assigned to a specific shift.  Instead, he functions as the relief sergeant, filling in when another sergeant is not working his usual shift.  There are 36 patrol officers beneath the lieutenants and sergeants.

The Department has rules of conduct for its employees.  An employee who violates these rules can be disciplined.  The Department has a progressive disciplinary policy.  The first level of discipline is an oral reprimand.  The second level is the issuance of a personal incident report (PIR).  The third level is a written reprimand.  The fourth level is a suspension without pay, which can range from one to five days.

The Village’s Board of Fire and Police Commissioners (BFPC) has the exclusive authority to impose any discipline greater than five days of suspension without pay.  The chief sends a letter to the BFPC requesting that charges be drafted, and thereafter, a hearing is then conducted by the BFPC.

The sergeants and lieutenants are responsible for issuing oral reprimands and PIRs to patrol officers and civilian personnel.  Patrol officers have no authority to issue PIRs.  As to the discretion that sergeants and lieutenants have with regard to their ability to issue PIRs, Chief Moore testified as follows:

“Q.  Okay.  And again, who can -– who can initiate this type of discipline?

A.  Sergeants and above.

Q.  Okay.  And how would it be initiated?

A.  Well –-

Q.  You can give me a hypothetical.

A.  It’s based upon discretion of a sergeant -– hypothetical, if a person is continuously late and –- the sergeant has the discretion of telling the person, ‘You can’t continue to be late.’

And if they continue to be late, then the sergeant would issue a personal incident report to document this person being late, and then, after a couple of -- of personal incident reports, then we move to a written reprimand.”         

Lieutenant Robert Frascone, a police officer for the Village of Bellwood, testified that he worked for the Department for 26 years.  Frascone stated that he was appointed chief of police in October 1990.  He stated that he held that post for 5½ years.  As to the discretion that sergeants and lieutenants have to issue PIRs, Frascone testified as follows:

“Q.  It’s a general order.  Who prepared that general order?

A.  This was prepared by myself.  This is the rules of conduct.

Q.  All right.  And are you familiar with Rule No. -- I believe it’s Rule No. 22?

A.  I’m familiar with this; but it’s absent from this.

Q.  It’s not in there; correct?

A.  Correct.

Q.  But in terms of that document, when did you issue this document?

A.  It was issued August 10th of 1995.

MR. REIMER: Let’s see if we can find it in Petitioner’s Exhibit No. 46.  Maybe that’s best -- it’s more complete.  You find it at A-07, and we’ll now test to see if we got it right.  Pardon me, yes.

JUDGE CLIFFORD: I found it.

MR. REIMER: So Rule 22, then, says, obviously, that failure to report to the department any violation of rules and regulations of any improper conduct.

Q.  Is this particular general order still in full force and effect?

A.  Yes, it is.

Q.  Now?

A.  Yes.

Q.  You have heard the testimony of the Chief, the Deputy Chief and Commander Mangano with respect to their opinions concerning whether or not you have any discretion to overlook violations of department rules and regulations and orders.

A.  Yes.

Q.  Would you agree or disagree with their testimony?

A.  I completely disagree with their testimony.

Q.  Why is that?

A.  The rules of conduct state[] that it is an expressly prohibited act to ignore violations of the rules and regulations as outlined in Rule No.  22, and they don’t leave any room for discretion in this.”

On March 10, 2003, ALJ Clifford issued a recommended decision and order dismissing the representation/certification petition because he held that the sergeants and lieutenants were supervisors within the meaning of the Act.  ALJ Clifford determined that the sergeants and lieutenants had the ability to direct and discipline subordinates and therefore were supervisors within the meaning of the Act. 

The ALJ found that the sergeants and lieutenants have the discretion to determine whether minor misconduct, such as tardiness or a uniform violation, merits discipline and whether a PIR should be issued regarding such misconduct.  The ALJ further found that “[f]rom the testimony and examples in evidence, it is clear that the watch commanders have such discretion even though as to specific forms of misconduct, such as reporting late for duty, some directives and memorandums seem to indicate a ‘zero-tolerance’ policy.”

ALJ Clifford concluded that the sergeants and lieutenants constituted supervisors as that term is defined by the Act.  He first concluded that the principal work of the sergeants and lieutenants was substantially different from that of their subordinates.  He then determined that the sergeants and lieutenants had the authority to perform or effectively recommend one or more of the 11 enumerated supervisory functions listed in section 3(r) of the Act.  He concluded that the sergeants and lieutenants had both the authority to discipline and direct employees.  ALJ Clifford concluded that the sergeants and lieutenants consistently use independent judgment in the performance of these functions.

Since ALJ Clifford had determined that the sergeants and lieutenants were supervisors withing the meaning of the Act, he accordingly determined that they were not public employees within the meaning of the Act and that the petition seeking a bargaining unit for them had to be dismissed.

On June 19, 2003, the Board issued its decision and order.  It was the Board’s determination that the sergeants and lieutenants had the authority to discipline employees to a limited extent.  The Board concluded that any oral reprimands issued by the sergeants and lieutenants did not constitute discipline for purposes of the Act because they were not recorded in an employee’s personnel files.  However, the Board determined that the PIRs issued by the sergeants and lieutenants did constitute discipline for purposes of the Act because they were recorded in the employees’ personnel files for a period of time and had an effect on the future level of discipline imposed for a similar violation as a result of the Department’s progressive discipline policy.  Thus, the Board reasoned that the PIRs had an effect on employees’ terms and conditions of employment such that they constitute discipline within the meaning of the Act.  

Thereafter, on July 21, 2003, the Union filed its notice of appeal.

ANALYSIS

The question we must determine is whether the Board erred when it determined that Bellwood police sergeants and lieutenants were supervisors within the meaning of section 3(r) of the Illinois Public Labor Relations Act.

“The Act excludes supervisors from participation in the same collective bargaining units as nonsupervisors in order to ensure employers that ‘“pro-union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interests.”’  
Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees
,
 153 Ill. 2d 508, 515, 607 N.E.2d 182, 186 (1992), quoting 
City of Freeport v. Illinois State Labor Relations Board
,
 135 Ill. 2d 499, 506, 554 N.E.2d 155, 159 (1990).  The Act seeks ‘to avoid the conflict of interest which arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates.’  
City of Freeport
,
 135 Ill. 2d at 517, 554 N.E.2d at 164.  ‘The potential for a conflict of interest lies in the supervisor's 
authority
 to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation.’ (Emphasis in original.)  
City of Freeport
,
 135 Ill. 2d at 518, 554 N.E.2d at 164.
 Section 3(r) of the Act, in relevant part, defines a ‘supervisor’ as: 
 ‘an employee [1] whose principal work is substantially different from that of his or her subordinates and [2] who has authority, 
in the interest of the employer
,
 to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, [3] if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. [4] Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding.’  (Emphasis added.)  5 ILCS 315/3(r) (West 2002).
In order to be deemed a supervisor, an employee must meet all four parts of the Act's supervisory definition.  
Chief Judge of the Circuit Court
,
 153 Ill. 2d at 515, 554 N.E.2d at 186.  Performance of any one of the 11 indicia of supervisory authority stated in the second prong of the definition, accompanied by independent judgment, is sufficient to support a finding of supervisory status. 
 
National Union of Hospital & Health Care Employees
,
 295 Ill. App. 3d at 1021, 692 N.E.2d at 1258, citing 
Chief Judge of the Circuit Court
,
 153 Ill. 2d at 516, 607 N.E.2d at 186.  ‘Independent judgment’ means that ‘the employee makes choices between two or more significant courses of action without substantial review by superiors.’  
National Union of Hospital & Health Care Employees
,
 295 Ill. App. 3d at 1021, 692 N.E.2d at 1258, citing 
Chief Judge of the Circuit Court
,
 153 Ill. 2d at 516, 607 N.E.2d at 186.”  
County of Cook v. Illinois Labor Relations Board-Local Panel
, 351 Ill. App. 3d 379, 393-94 (2004).

“The Illinois State Labor Relations Board, the agency charged with responsibility for administering and enforcing the Act, is empowered to determine whether an individual meets the definition of ‘supervisor’ in the Act. Judicial review of the Board's decision is governed by the provisions of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3-101 
et
 
seq
.
).  That statute specifies that judicial review of agency action extends to all questions of law and fact presented in the record.  It further provides that the agency's findings and conclusions on questions of fact shall be held 
prima
 
facie
 true and correct.  (Ill. Rev. Stat. 1987, ch. 110, par. 3-110.)”  
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 507 (1990).

The Illinois Supreme Court has held that the applicable standard of review of an administrative agency’s decision depends on whether the question presented is one of fact or law.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204 (1998).  A reviewing court will overturn an agency’s findings of fact only if the agency’s determinations are against the manifest weight of the evidence.  
City of Belvidere
, 181 Ill. 2d at 204.  An agency’s determination of a question of law, however, is entitled to less deference and is reviewed 
de
 
novo
.  
City of Belvidere
, 181 Ill. 2d at 205.  The court in 
City of Belvidere
 further held that the appropriate standard of review for a mixed question of fact and law is a clearly erroneous standard.  
City of Belvidere
, 181 Ill. 2d at 205.

The Union argues that the Board’s decision that Bellwood police sergeants and lieutenants were supervisors within the meaning of section 3(r) of the Act was clearly erroneous.  In particular, the Union contends that sergeants and lieutenants do not satisfy the third prong of the definition of “supervisor” that is found in the Act.  The Union maintains that the Board’s decision was erroneous because the sergeants’ and lieutenants’ ability to issue PIRs does not require the use of consistent, independent judgement as required by the Act.

The Union further contends that the sole basis for the Board’s finding that the sergeants and lieutenants were supervisors within the meaning of section 3(r) was predicated on its finding that the sergeants and lieutenants had the authority to discipline within the meaning of section 3(r) of the Act, as a result of their ability to issue PIRs.       

The Union also contends that the Board erroneously determined that issuing PIRs required the consistent use of independent judgment such that the sergeants and lieutenants are supervisors within the meaning of the Act.  Instead, the Union argues that “it was clearly established at the hearing” that the sergeants and lieutenants do not have discretion with regard to reporting their subordinates’ violations of the Department’s various policies and rules of conduct.  The Union specifically refers to Rule 22 of the Department’s rules of conduct, which makes it a violation for failing to report a violation of the rules.  The Union maintains that Rule 22 does not give the sergeants and lieutenants the discretion not to report violations.

Furthermore, the Union relies on a directive entitled “Reporting Late for Duty” that was issued by Deputy Chief Bajkowski in May 2001, which stated:

“Disciplinary action will be taken against any supervisor who does not write up any full-time officer, part-time officer, dispatcher, and records clerk who reports late for duty.”

The Union maintains that this directive is further proof that the sergeants and lieutenants do not have any discretion in whether  to issue a PIR when a subordinate is late for duty.  The Union then points to a number of PIRs that were issued for tardiness after this directive was issued, maintaining that they were not discretionary in nature.  The Union argues that when sergeants or lieutenants observed violations, they were bound to report them.

We find 
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499 (1990), to be instructive.  In 
City of Freeport
, the court was faced with a similar question: whether certain lieutenants and sergeants employed by the Freeport police department were supervisors within the meaning of the Act. 

The sergeants and lieutenants at issue also had the ability to issue either verbal or written reprimands to their subordinates.  The court in 
City of Freeport
 found that the sergeants and lieutenants were supervisors within the meaning of section 3(r) of the Act because of their authority to use independent judgment in imposing discipline.  
City of Freeport
, 135 Ill. 2d at 521.

Here, the Board correctly determined that the sergeants and lieutenants at issue were supervisors within the meaning of section 3(r) of the Act.  The sergeants and lieutenants at issue are supervisors within the meaning of the Act because they performed at least one indicia of supervisory authority with independent judgment, 
i.e.
, they had the ability to issue PIRs in lieu of oral reprimands. 

The issuance of a PIR by a sergeant or lieutenant, by itself, in fact constituted discipline.  A PIR was a step above an unrecorded verbal reprimand in the progressive disciplinary policy instituted by the Department.  Under the Department’s disciplinary policy, the mere fact that a PIR existed in an officer’s personnel file was evidence that a disciplinary action had been taken against the officer.  This is supported by the following testimony of Chief Moore:

“Q.  –- and the first stack, can you identify that first, just briefly look at it and identify what that stack is.

A.  Okay.  This looks like personal incident reports that were written by sergeants, and some of them progressed to -- I see one here that’s a written reprimand was given for progression of personal incident reports.”

Q.  Is it fair to say that these are documents which evidence the disciplinary process in the department?

A.  Yes, ma’am.

***

Q.  Okay.  And again, who can –- who can initiate this type of discipline?

A.  Sergeants and above. 

Q.  Okay.  And how would it be initiated?

A.  Well –    

Q.  You can give me a hypothetical.

A.  It’s based upon discretion of a sergeant –- hypothetical, if a person is continuously late and -- the sergeant has the discretion of telling the person, ‘you can’t continue to be late.’

And if they continue to be late, then the sergeant would issue a personal incident report to document this person being late, and then, after a couple of -- personal incident reports, then we move to a written reprimand.”

Since the issuance of PIRs formed the basis for more severe discipline, they therefore had the requisite effect on the officers’ employment status such that they constituted discipline under the Act.  Additionally, the PIRs remained in an officer’s personnel file for a period of six months to a year and served as a reference for other disciplinary recommendations.   

Furthermore, the Board correctly determined that the sergeants and lieutenants’ ability to issue PIRs required the consistent use of independent judgment such that they are to be considered supervisors within the meaning of section 3(r) of the Act.  The following testimony by Chief Moore is evidence of the sergeants and lieutenants’ use of discretion when they issued PIRs:

“Q.  Now, we talked a lot about -- we talked a lot yesterday about you believed that your sergeants, lieutenants, and watch commanders had discretion with respect to observing certain violations of this code of conduct or the code of ethics; is that correct?

A.  I know they do.

Q.  You know they do?

A.  Yes, sir.

Q.  All right.  And you know that because...

A.  Because they’ve given me written documentation.

Q.  Okay.  And in terms of this -- these conduct -- the -- this rules of conduct, does it say anywhere in this policy that a supervisor has any -- or a sergeant, lieutenant, or a watch commander –- has any discretion to report or not report violations?

A.  It says that all members will adhere to the violations.

Q.  Adhere to the violations?

A.  Yes.

Q.  Meaning that everybody’s got to follow this prescribed code of conduct; right?

A.  Yes.  Uh-huh.

Q.  Does any sergeant, lieutenant, or watch commander have the authority to allow any sworn member to violate any of these rules and regulations?

A.  I don’t understand your question.

Q.  If I was a sergeant working for you, do I have the authority to tell any one of the officers that are working under me that it’s okay to violate one of these rules and regulations?

A.  That it’s okay to violate it?

Q.  Yes.

A.  No.

Q.  It’s permissible?

A.  No.  No.      

Q.  All right.  Now, I think your testimony yesterday was that supervisors have discretion in minor incidents –- is, I believe, your testimony.  I’m not trying to put words in your mouth.

A.  Uh-huh.

Q.  Does that sound correct?

A.  I’m not sure.  I don’t recall.

Q.  Do you remember testifying about it’s the -- supervisors have -- or sergeants, lieutenants, watch commanders -- have discretion for violations over minor –

A.  Certain –- certain -- certain violations, yes.

Q.  Certain violations.  And I think you used the example like being late for work or not –  

A.  Yes.

Q.  –- reporting for duty.

A.  I recall that, yes.

Q.  And obviously, you believe, in your department, that a sergeant, lieutenant, or captain has discretion, if any officer shows up late for work, that they can do one of a couple of things; correct?

A.  I know for a fact.

Q.  You know that for a fact?   

A.  Yes, sir.

Q.  All right.  Now, if you look at Union Exhibit No. 37 –-

***

Q.  All right.  Union Exhibit No. 37 is a directive from Chief Bajkowski; correct?

A.  Yes.  Uh-huh.

Q.  Dated May 10 of 2001, so over a year ago?

A.  (The witness nodded his head up and down.)

Q.  And in that the subject is ‘Reporting Late for Duty.’  I’m reading this memorandum.

    It says, ‘Disciplinary action will be taken against any supervisor who does not write up any full-time officer, part-time officer, dispatcher, and records clerk who reports late for duty.’  

    Now, Chief, isn’t it fair to say that any discretion that any of your officers -- or sergeant, lieutenants, and watch commanders -- may have had was eliminated by this memo?

A.  But they still have discretion.

Q.  It says ‘will,’ not ‘may.’

A.  They still have discretion.

Q.  That’s how you read this?

A.  Yes, they still have discretion.”

Here, the Board properly determined that the sergeants and lieutenants’ ability to issue discipline in the form of PIRs was evidence of their use of independent judgment and consequently of their supervisory status.

CONCLUSION

For the foregoing reasons, the decision of the Illinois Labor Relations Board is affirmed.

Affirmed.

Greiman, J. and Quinn, J., concur.