P. v. Stevenson 

No. 2--04--1010 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_______________________________________________________________________________

METROPOLITAN ALLIANCE OF POLICE, ) On Petition for Administrative Review

Village of Woodridge Police Sergeants ) from the Labor Relations Board.

Chapter No. 132, )

) 

Petitioner, ) 

)

v. ) ILRB Case No. S--RC--03--051

)

THE ILLINOIS LABOR RELATIONS )

BOARD, STATE PANEL, and THE )

VILLAGE OF WOODRIDGE, ) 

) 

Respondents. ) 

______________________________________________________________________________

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner, the Metropolitan Alliance of Police, Village of Woodridge Police Sergeants Chapter No. 132 (MAP), seeks administrative review of the decision of the respondent Illinois Labor Relations Board, State Panel (Board) denying MAP's petition for certification as the sole bargaining unit for all police sergeants employed by the respondent Village of Woodridge (Village).  MAP challenges the Board's finding that the Village's sergeants meet the criteria for "supervisors" under section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2002)) and therefore are barred from forming a bargaining unit.  We confirm.  

BACKGROUND

MAP filed a previous representation/certification petition in 1995.  The Board denied that  petition, finding that the sergeants employed by the Village were "supervisors" as defined by the Act.  Several years later, in October 2002, MAP filed another petition, claiming that the sergeants were not supervisors.  The Village objected to the petition on the ground that the issue had already been decided.  Administrative Law Judge (ALJ) Sharon B. Wells agreed with the Village that the Board could not revisit the 1995 decision unless MAP proved that circumstances had substantially changed since the decision.  Following a hearing, the ALJ determined that the Village's sergeants were still supervisors and consequently denied the petition.  As for the preliminary issue of changed circumstances, the ALJ wrote: "Inasmuch as that issue also requires discussion of the sergeants' supervisory status, I will only address the substantive issue of whether sergeants are supervisors within the meaning of the Act."  Indeed, the ALJ never did address the issue of changed circumstances.  

The Board upheld the ALJ's decision, agreeing with MAP that "changed circumstances" warranted revisiting the 1995 decision, although it did not identify what circumstances had changed.  However, the Board sided with the Village on the substantive issue, finding that the sergeants were still "supervisors" as defined by the Act.  This timely appeal followed.

The facts are taken from the hearing before the ALJ.  There are three divisions within the Village's police department: patrol, investigative services, and support services.  The investigative services division is divided into a tactical unit and a detective unit.  Over each division is a deputy chief, who reports directly to the chief of police.  There are eight sergeants, six of whom are assigned to the patrol division and one each to the tactical and detective units within the investigative services division.  The sergeants oversee a total of 38 sworn officers and five civilian community service officers (CSOs).  There is no sergeant assigned to the support services division.  Neither the chief nor his deputies are on duty on nights and weekends.  During these times, the sergeants are the highest command authorities on duty in their respective divisions. 

Some of the sergeants--in particular, patrol and tactical sergeants--have duties similar to those of officers.  For instance, patrol sergeants spend about 75% to 80% of their time in the field.  They respond to calls, take reports, make arrests, and write parking tickets.  Unlike patrol officers, however, patrol sergeants have discretion whether to respond to calls other than emergencies.  Frequently when they do respond, it is primarily in backup or oversight supervisory capacities rather than as primary responders.  Patrol sergeants make fewer arrests and write fewer tickets than patrol officers.  Tactical sergeants, too, spend the majority of their time in the field.

Sergeants also have many duties not shared by officers.  These duties fall into the following classifications.  

I.  
Oversight/Direction
 

In addition to conducting roll call at the beginning of a shift, sergeants assign the beats for that shift.  The beats are assigned according to a prearranged rotation drafted by a group of sergeants.  If there are not enough patrol officers on duty to cover all beats in a shift, the sergeant may choose to either cover the beat himself, call in an off-duty officer, or leave the beat uncovered.  Sergeants also address requests for vacation and overtime.   

Sergeants review and edit the incident reports submitted by officers.  A sergeant will return a report for redrafting if he finds it deficient.  Sergeants perform periodic evaluations of officers and CSOs.  The evaluations of officers have no impact on their salaries, which are set by a collective bargaining agreement between the officers and the Village.  The evaluations are, however, a factor in promotions.  An officer seeking promotion is assigned a numerical rating between 0 and 100.  A maximum of 7.5 points is awarded based on the average of the officer's six most recent evaluations.  The evaluations of CSOs impact their pay increases, but there was no evidence of just how much impact they have. 

II.  
Grievances

The officers' collective bargaining agreement with the Village defines a "grievance" as "a dispute involving the interpretation or application of this Agreement."  The contract prescribes a four-step procedure by which officers must pursue grievances.  First, the officer must notify his "immediate supervisor," 
i.e.
, a sergeant, of the grievance.  The sergeant must answer the grievance within a prescribed time.  The contract provides that "if the grievance is not settled in Step One, or if a timely answer is not given," then the officer must appeal to a deputy chief, and from there, if need be, to the chief of police and ultimately to the village administrator.  Chief Geoffrey Kouros confirmed in his testimony that the Village's sergeants have discretion to grant or deny grievances at step one.  Sergeants Kenneth Boehm and Terrence Freeman testified that they have resolved grievances regarding bereavement leave, overtime, and vacation.  Boehm and Freeman recounted several specific incidents where they denied such grievances.  They did not mention any times where they granted grievances.    

III.  
Discipline
 

Department regulations require sergeants to ensure that patrol officers abide by the department's rules of conduct and to take corrective action when a violation occurs.  The sergeants have the authority to orally reprimand.  Though, technically, a sergeant may not issue written reprimands, he may make a record of an oral reprimand, which will become part of the employee's personnel file for 30 months and may be used as a basis for future discipline should further misconduct occur.  If the sergeant believes that the infraction is deserving of a sanction greater than an oral reprimand, such as a written reprimand or a suspension without pay, he will refer the case to a deputy chief, who will review the sergeant's recommendation regarding further punishment.  The final decision is made by the chief.  Chief Korous testified that he gives a sergeant's recommendation "a large amount of weight" and accepts it in 95% of cases.  Korous testified that, of the 20 to 22 internal investigations that are performed each year, he could recall only two incidents where a sergeant's recommendation on discipline was rejected in whole or in part.  Sergeants Chris Marema and Terrence Freeman recalled three incidents where a sergeant's recommendation was rejected in whole or in part.     

IV.  
Other Duties
  

Various other responsibilities distinguish sergeants from officers.  Sergeants  approve personal recognizance bonds and grant permission for overnight parking on the Village's streets.  Sergeants coordinate special policing activities, such as roadside safety checks and the bicycle patrol, and also serve as liaison officers for various department outreach programs.  Sergeants oversee special training programs such as the annual departmental training session, which employs a computerized combat simulator.   Sergeants are also involved in setting department policy and preparing budgets. 

ANALYSIS

An administrative agency's findings of fact are reviewed under the manifest weight standard, and its legal determinations are reviewed 
de novo
.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204-05 (1998).  An agency's determination of a mixed issue of law and fact, however, is reversible only if clearly erroneous.  
City of Belvidere
, 181 Ill. 2d at 205.  Here, neither the facts nor the law is contested, the sole question being whether the Board properly applied the Act to the undisputed facts.  Therefore, we review for clear error.  

The Village raises a preliminary issue, arguing that the Board failed to provide adequate factual findings on the question of whether circumstances had substantially changed since the Board's prior adjudication of this matter.  As the Board recognized in its decision, "it is not appropriate to reconsider a prior decision of the Board unless there has been a substantive change in the relevant facts (
i.e.
, a substantial change in the duties and functions of an existing title), or a significant change in the controlling statutory or case law."  See 
Cook County Hospital Doctoral Staff/199 National Union of Hospital & Health Care Employees
, 4 Pub. Employee Rep. (Ill.) par. 3017, No. L--RC--88--20 (ILLRB May 18, 1989); 
Village of Alsip
, 3 Pub. Employee Rep. (Ill.) par. 2051, No. S--RC--87--57 (ISLRB July 23, 1987).  The Village poses this preliminary issue as a bar to our review of the substantive issue in this case.  We agree with the Village that the Board should have more fully analyzed the issue of changed circumstances before proceeding any further.  However, the Board did in fact proceed beyond this preliminary issue and determined that the Village's sergeants are supervisors.  Since, as we explain below, we agree with that holding and side with the Village, there would be no point in our remanding this case for a finding on the preliminary issue.    

We proceed, therefore, to the substance of this appeal.  MAP argues that the Board erred in concluding that the sergeants are "supervisors" under the Act.  The Act excludes supervisors from participation in the same collective bargaining units as nonsupervisors in order "to ensure employers that 'pro-union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interests.' "  
Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31
, 153 Ill. 2d 508, 515 (1992), quoting 
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 506 (1990).   The Act seeks "to avoid the conflict of interest which arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates."  
City of Freeport
, 135 Ill. 2d at 517.  "The potential for a conflict of interest lies in the supervisor's 
authority
 to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation." (Emphasis in original.)  
City of Freeport
, 135 Ill. 2d at 518. 

Section 3(r) of the Act defines a "supervisor" as 

"an employee [1] whose principal work is substantially different from that of his or her subordinates and [2] who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, [3] if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment.  [4] Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding."  5 ILCS 315/3(r) (West 2002).

In order to be deemed a supervisor, an employee must meet all parts of the Act's definition.  
Chief Judge
, 153 Ill. 2d at 515.  Of course, by the terms of the statute, police employees need not comply with the fourth part of the definition.  

In determining whether the first part of the definition is satisfied, 
i.e.
, whether an employee's principal work is substantially different from that of his subordinates, the Board follows a two-step inquiry.  
City of Freeport
, 135 Ill. 2d at 514.   First, the Board determines whether the employee's work is "obviously and visibly different" from that of his subordinates.  
City of Freeport
, 135 Ill. 2d at 514.  Where the employee's work is "facially similar to those of the rank and file," the Board determines whether " 'the nature and essence' " of his work is substantially different.  
City of Freeport
, 135 Ill. 2d at 514, quoting 
City of Burbank
, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S--RC--45 (ISLRB June 6, 1985). 

" 'The nature and essence test [is] a qualitative, rather than quantitative analysis.  The 
existence
 of the supervisory authority, and the 
ability
 to exercise it to impact a subordinate's employment 
at any time
, changes the nature of the relationship between the [ranking officers] and the patrol officers to an extent which renders the nature of their functions very different despite their facial similarity.' "  (Emphasis in original.)  
City of Freeport
, 135 Ill. 2d at 518, quoting 
Village of Alsip
, 2 Pub. Employee Rep. (Ill.) par. 2038, No. S--RC--303 (ISLRB September 5, 1986).

Thus, if the employee's work is either obviously or visibly different from that of his subordinates, or is substantially different in nature and essence from their work, then part one of the definition is satisfied.

The ALJ found that the duties of sergeants were not obviously and visibly different from those of officers, but were substantially different in nature and essence.  Though the Village and the Board challenge both findings, we need not examine whether the duties of sergeants are obviously and visibly different from those of officers, because we find that they are substantially different in nature and essence.  Although some of the sergeants, particularly the tactical and patrol sergeants, perform many of the same tasks as officers, the sergeants as a body have many duties that officers do not have.  Sergeants assign beats, perform evaluations, resolve grievances, approve requests for vacation and overtime, address violations of the rules of conduct, and play a role in the fashioning of departmental budgets and policy.  These supervisory and administrative aspects distinguish the sergeants' work in nature and essence from the work of officers.  See 
City of Freeport
, 135 Ill. 2d at 519 (nature and essence of ranking officers' work was substantially different where the chief relied on them "to observe, direct, evaluate and discipline their subordinates and to ensure that the [officers] are properly performing their jobs"); 
Village of Justice
, 17 Pub. Employee Rep. (Ill.) par. 2007, No. S--RC--00--009 (ISLRB November 13, 2000) (nature and essence of sergeants' work was substantially different where sergeants had authority to schedule work, review and approve reports, and address grievances); 
Village of Glen Carbon
, 8 Pub. Employee Rep. (Ill.) par. 20, No. S--UC--91--102 (ISLRB June 6, 1992) (sergeants had "authority to assign patrolmen, issue verbal and written reprimands to subordinates, to suspend a subordinate for a day without pay, to complete evaluations for subordinates, to determine whether to utilize subordinates for overtime pay, and to instruct subordinates in the performance of their duties").  Also significant is the fact that sergeants, not officers, are the highest command authorities present on nights and weekends when the chief and his deputies are not on duty.  See 
City of Freeport
, 135 Ill. 2d at 519; 
Village of Glen Carbon
, 8 Pub. Employee Rep. (Ill.) par. 2026.  

MAP advances no real argument against the ALJ's holding on this point, but merely asserts, absent substantiation, that the supervisory and administrative functions of sergeants do not have the potential to "impact *** [the] terms and conditions" of the officers' employment.   There indeed is the potential for such impact in the sergeants' ability to address grievances on such issues as bereavement leave, overtime, and vacation, and to issue reprimands that may be the basis for further disciplinary action.  We conclude that the principal work of the Village's sergeants is substantially different from that of their subordinates, and therefore part one of the definition of "supervisors" is satisfied. 

Next, we determine whether the sergeants perform at least 1 of the 11 duties enumerated in part two of the definition, and whether they do so with "independent judgment," as required by part three.  "The presence of even one indicium of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory status."  
Department of Central Management Services v. Illinois State Labor Relations Board
, 278 Ill. App. 3d 79, 83 (1996).  An employee exercises "independent judgment" when he makes a choice between two or more significant courses of action without substantial review by superiors.  
Metropolitan Alliance of Police v. Illinois Labor Relations Board
, 354 Ill. App. 3d 672, 679 (2004).   

The ALJ found that all sergeants employed by the Village exercise independent judgment in recommending discipline for officers and in adjusting their grievances.
(footnote: 1)  MAP disputes both determinations.  First, MAP argues that the sergeants have no effective power to recommend discipline, because their recommendations are independently reviewed by a supervisor, who has on occasion rejected them.  "In order to be deemed effective, [a recommendation] must be adopted as a matter of course, with little, if any, independent review."  
Village of Hoffman Estates
, 21 Pub. Employee Rep. (Ill.) par. 15, at 53, No. S--RC--03--133 (ISLRB January 19, 2005).  In 
Village of Hoffman Estates
, the Board held that a sergeant's ability to issue recommendations to superiors regarding punishment of officers did not qualify him as a supervisor, because his recommendations were subject to full review by the superiors, who occasionally rejected the recommendations, at least in part.  See also 
Chief Judge
, 153 Ill. 2d at 521 (employees within probation department did not have the power to discipline with independent judgment, because their recommendations regarding punishment were reviewed by superiors).  Although the recommendations of the Village's sergeants carry great weight with the chief, they nonetheless are subject to review and have on occasion been rejected, at least in part.  Therefore, we conclude that the ability of the sergeants to issue recommendations for punishment does not evince sufficient authority to qualify them as supervisors under the Act.      

However, in addition to the power to recommend punishment, sergeants have the authority to issue oral reprimands and document them for future reference.  There is no evidence that these documented oral reprimands are reviewed for appropriateness by the chief or deputy chief.  Furthermore, the reprimands may serve as the basis for discipline if further misconduct occurs.  In 
Metropolitan Alliance of Police
, the court held that sergeants employed by the City of Bellwood had authority to recommend discipline with independent judgment based on their ability to issue a personal incident report describing the misconduct of an officer, which remained in the officer's personnel file for six months and could be used as the basis for more severe discipline.  
Metropolitan Alliance of Police
, 354 Ill. App. 3d at 681-82.  Under this reasoning, the documented oral reprimands issued by the Village's sergeants show the requisite authority exercised with independent judgment.   Next, MAP attacks the ALJ's determination that the Village's sergeants adjust grievances with the exercise of independent judgment.  MAP relies on 
Village of Elk Grove v. Illinois State Labor Relations Board
, 245 Ill. App. 3d 109 (1993), 
in suggesting that the sergeants do not "adjust grievances" according to the definition of the Act, because their authority extends in practice only to minor matters.  In 
Village of Elk Grove
, the court held that the lieutenants in Elk Grove's fire department did not adjust grievances within the definition of the Act, because the matters they addressed concerned "minor disputes *** such as personality conflicts and complaints regarding work assignments."  
Village of Elk Grove
, 245 Ill. App. 3d at 114.  Here, by contrast, the officers' collective bargaining agreement with the Village defines a "grievance" as any dispute involving a matter addressed in the agreement, which governs a veritable host of matters, including wages, vacation, and sick leave.  The Village's sergeants are empowered by the agreement to address grievances at step one of the grievance process and have in fact addressed grievances involving bereavement leave, overtime, and vacation.  Thus, the Village's sergeants are authorized by contract to address, and have in practice addressed, grievances of clearly greater weight than those the lieutenants in 
Village of Elk Grove
 were authorized to address, and therefore we find that case distinguishable. 

MAP claims there is no consequence to the bare fact that the agreement vests sergeants with the authority to address grievances at step one.  MAP cites several cases for the proposition that "[m]ere designation as the first step in a grievance procedure, without more, does not constitute supervisory authority under the Act."  See 
Metropolitan Alliance of Police, Chapter No. 4
, 19 Pub. Employee Rep. (Ill.) par. 125, No. S--RC--01--063 (ISLRB June 30, 2003), (hereinafter 
Bolingbrook
); 
City of Aurora
, 7 Pub. Employee Rep. (Ill.) par. 2026, No. S--UC--90--3 (ISLRB April 24, 1991); 
American Federation of State, County & Municipal Employees
, 5 Pub. Employee Rep. (Ill.) par. 2012, No. S--RC--88--76 (ISLRB April 28, 1989).  A look at the facts of these cases helps us to understand this rule.  In 
Bolingbrook
, the lieutenants whose status was at issue were given contractual authority to deny or grant grievances at the first step of the grievance procedure, but they  routinely denied all grievances, including the ones they agreed with.  Moreover, the evidence was unclear whether the chief of police had ever informed the lieutenants that they could grant grievances.  The Board inferred from these facts that the lieutenants did not in practice have any discretion with respect to grievances.  In 
City of Aurora
 and 
American Federation of State, County & Municipal Employees
, there was no evidence that the employees whose status was at issue had ever addressed any grievances despite being empowered to do so by contract.

The present case is distinguishable from these authorities.  Unlike the employees in 
City of Aurora
 and 
American Federation of State, County & Municipal Employees
, the Village's sergeants have indeed addressed grievances pursuant to the contract.  Although this case is like 
Bolingbrook
 in that there is no evidence of any specific incident where a sergeant granted a grievance, 
Bolingbrook
 is ultimately inapposite because there is no indication that the sergeants routinely deny grievances pursuant to unwritten policy.  The Village's sergeants enjoy more than a "mere designation" as first reviewers of grievances.  

We conclude that the Village's sergeants recommend discipline of subordinates and adjust their grievances, both while exercising independent judgment.  We agree with the Board that the sergeants are "supervisors" within the meaning of the Act.  

For the foregoing reasons, we confirm the decision of the Board.

   Confirmed.  

BYRNE and GILLERAN JOHNSON, JJ., concur.

FOOTNOTES
1:  
The ALJ also found that patrol and detective sergeants, particularly, exercise independent judgment in evaluating and directing subordinates.  We need not evaluate this finding, because we affirm the ALJ's conclusions regarding the supervisory authority common to all sergeants.