SIXTH DIVISION
September 26, 2008

No. 1-07-2722

| | | |
|---|---|---|
| THE VILLAGE OF HAZEL CREST, | ) | Petition for Review from the |
| | ) | Illinois Labor Relations Board, |
| Petitioner-Appellant, | ) | State Panel |
| v. | ) | |
| | ) | |
| ILLINOIS LABOR RELATIONS BOARD, STATE | ) | No. SRC 06175 |
| PANEL; and INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS, LOCAL 150, AFL-CIO, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE CAHILL delivered the opinion of the court:

This is a dispute between the Village of Hazel Crest (Village) and the International Union of Operating Engineers, Local 150, AFL-CIO (Union), over whether sergeants employed by the Village's police department are "supervisors" within the meaning of section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2006)). Departing from a 2001 decision involving the Village and another employee union, the Illinois Labor Relations Board, State Panel (Board), held Hazel Crest sergeants are not supervisors and could form a collective bargaining unit without the Village's consent to do so. The Village appeals the Board's decision directly to this court under section 9(i) of the Act (5 ILCS 315/9(i) (West 2006)). We believe the sergeants are supervisors within the meaning of the Act and reverse the Board.

On May 9, 2006, the Union filed a petition with the Board that sought exclusive

representation of a bargaining unit composed of police sergeants employed by the Village. The Village moved to dismiss the petition. The Village argued that whether its sergeants are supervisors within the meaning of the Act had already been decided in Village of Hazel Crest v. International Brotherhood of Teamsters, Local 726, 18 Pub. Employee Rep. (Ill.) par. 2006, No. S-RC-01-061 (ISLRB December 11, 2001) (Hazel Crest I). The administrative law judge (ALJ) who presided over that case had concluded that sergeants were supervisors within the meaning of the Act because they exercised supervisory authority in issuing verbal reprimands and evaluating subordinates. No exceptions to the ALJ's recommended decision were filed and the decision became final and binding on the parties, although without precedential impact. See 80 Ill. Adm. Code §1200.135(b)(5), added at 27 Ill. Reg. 7365, eff. May 1, 2003.

Here, the Union, which was not a party to Hazel Crest I, argued that there were changed circumstances within the Village's police department that necessitated a new look at the issue. Both parties were ordered to file a statement specifying which facts, if any, had changed since Hazel Crest I had been decided. After reviewing these statements, the ALJ denied the Village's motion to dismiss, saying, "I have determined not to dismiss the instant petition, having instead determined *** that there are enough alleged changes and disputes as to fact to warrant hearing, despite the previous decision." (Emphasis omitted.) The Village did not file an exception from this finding.

There followed an evidentiary hearing on the Union's petition, held on December 19, 2006. The evidence showed that the Village's police department is headed by a police chief. Second in command are two deputy chiefs. At the time of the hearing, Malcolm White

performed the functions of both deputy chief positions. White's official rank was that of a patrol officer despite his appointment to the deputy chief position. The five sergeants at issue here are subordinate to White.

The evidence showed that each sergeant is assigned a patrol shift. During a typical shift, a sergeant will split his time performing administrative details at the department and patrolling the streets. While on patrol, the sergeant oversees the work of about four patrol officers and acts as backup where needed. In the event a sergeant is not available to supervise a shift, the most senior patrol officer on duty will act as the officer in command (OIC) during that shift.

Sergeants are responsible for continually monitoring their subordinates, documenting instances of wrongdoing and completing performance evaluations. The department's disciplinary procedure is governed by general order of the police chief. That order, effective January 15, 1995, and also in effect at the time Hazel Crest I was decided, sets out a progressive disciplinary scheme that "incorporates counseling and training as well as punitive measures as forms of discipline." "Discipline may be either positive or negative ***. Whenever possible and practical, *** employee counseling and training should be substituted for punitive procedures." The order gives sergeants authority to discipline subordinates through training, counseling and verbal warnings:

> "All supervisory personnel in the Department are crucial to the
> disciplinary process. They have the power to observe, correct, recommend, and
> reprove.
>
> First line supervisors, including personnel designated as Shift

Commander, have the greatest opportunity to observe the conduct, performance and appearance of personnel under their immediate authority and the chance to better understand individual personalities. With observation and understanding, the first-line supervisors are in the best position to detect and correct minor problems before they become repetitive or major ones.

* * *

First-Line Supervisors, [*i.e.*,] patrol sergeants and personnel designated as Shift Commanders[,] may:

Provide training for subordinates if the supervisor is qualified and work conditions make it practical;

Recommend training for a subordinate;

Counsel subordinates;

Issue verbal warnings with a signed acknowledgment; and

Recommend, to their superior, [that] more severe disciplinary action be taken."

Testimony by Deputy Chief White and Sergeant Dennis Peters confirmed that sergeants have the discretion and authority to counsel, train and issue verbal warnings to subordinates for minor infractions. Verbal warnings are documented in a logbook where they remain for two years and can be referred to in evaluating subordinates. While sergeants have authority to recommend disciplinary measures beyond verbal warnings, they have no authority to initiate those measures independently.

In a 41-page recommended decision and order, the ALJ held sergeants are not supervisors within the meaning of the Act. Although finding that the principal work of sergeants is substantially different from the work of patrol officers, the ALJ concluded that sergeants did not exercise any of the 11 supervisory functions enumerated in section 3(r) of the Act. With respect to discipline, the ALJ gave little or no weight to evidence that sergeants have discretionary authority to discipline subordinates for minor infractions through training, counseling and/or verbal warnings. The ALJ said: "Verbal reprimands, although considered discipline by the department, do not themselves change the daily work life of employees." The ALJ also noted that the current police chief requires sergeants to report all misconduct, such as tardiness and absenteeism. The ALJ believed the chief's direction terminated the sergeants' discretion to discipline.

Despite the statutory directive to the contrary, the ALJ held rank to be determinative of whether the sergeants are supervisors within the meaning of the Act. See 5 ILCS 315/3(r) (West 2006) ("in determining supervisory status in police employment, rank shall not be determinative"). The ALJ found that sergeants are not supervisors because: (1) they are subordinate to a lower-ranking deputy chief; and (2) a standard patrol officer can perform the functions of a sergeant when acting as the OIC. The ALJ concluded: "I find consideration of rank herein crucial and, ultimately, fatal to [the Village's] attempt to establish and sustain its burden of proof that the sergeants are supervisors within the meaning of the Act."

The Board agreed with the ALJ's recommended decision and order. The Board explained: "the record evidence is far from what is necessary to support finding that the

[sergeants] are supervisors within the meaning of section 3(r) of the Act." The Board directed its executive director to certify the Union as the exclusive bargaining representative for the sergeants. The Village now appeals.

There are "three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law[] and mixed questions of fact and law." Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 210, 886 N.E.2d 1011 (2008). Our standard of review depends on the type of question presented. Cinkus, 228 Ill. 2d at 210. An agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. Cinkus, 228 Ill. 2d at 210. Where the question is a purely legal one, such as the proper interpretation of a statute, our review is not as deferential. Cinkus, 228 Ill. 2d at 210. We review questions of law *de novo*. Cinkus, 228 Ill. 2d at 210. Sometimes an agency decision will involve mixed questions of law and of fact. This situation typically arises where the historical facts are not in dispute and the issue is whether the established facts satisfy the statutory standard. Cinkus, 228 Ill. 2d at 210. Mixed questions of law and fact are subject to a clearly erroneous standard of review. AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 392, 763 N.E.2d 272 (2001). An agency decision is clearly erroneous "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger, 198 Ill. 2d at 395, quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). This appeal involves a mixed question of law and fact: we are asked to review the Board's

6

application of the undisputed facts to section 3(r) of the Act, which defines the term "supervisor" and is relevant to whether the sergeants may form collective bargaining units.

"The [Act] provides a comprehensive system of collective bargaining for those public employees and employers who fall within its scope." City of Freeport v. Illinois State Labor Relations Board, 135 Ill. 2d 499, 505, 554 N.E.2d 155 (1990). One of the purposes of the Act is "to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 2006). In keeping with this purpose, the Act gives public employees the right to organize for the purpose of collective bargaining. 5 ILCS 315/6 (West 2006).

A class of jobs or positions held by employees who share collective interests may form a unit to be represented by a labor organization for collective bargaining. 5 ILCS 315/3(s)(1) (West 2006). With respect to non-state police officers, such as the sergeants here, the Board cannot certify for the purpose of collective bargaining a unit consisting of both supervisors and nonsupervisors, or supervisors only, unless the employer agrees. 5/ILCS 315/3(s) (West 2006). "Supervisors are excluded from bargaining units under the Act to avoid the conflict of interest [that] arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates." City of Freeport, 135 Ill. 2d at 517. To accomplish this purpose, the legislature has not left the term "supervisor" to chance or local interpretation. The legislature defines "supervisor" in the statute as:

"an employee whose principal work is substantially different from that of

7

his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or *discipline* employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding. In addition, in determining supervisory status in police employment, rank shall not be determinative."

(Emphasis added.) 5 ILCS 315/3(r) (West 2006).

A police officer meets this definition of supervisor only if he: (1) performs principal work substantially different from that of his subordinates; (2) has authority in the interest of the employer to perform one or more of the 11 enumerated supervisory functions or to effectively recommend such action; and (3) consistently uses independent judgment in performing or recommending the enumerated actions. City of Freeport, 135 Ill. 2d at 512. " 'The presence of even one indicium of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory status.' " Metropolitan Alliance of Police v. Illinois Labor Relations Board, State Panel, 362 Ill. App. 3d 469, 477, 839 N.E.2d 1073 (2005), quoting Department of Central Management Services v. Illinois State Labor Relations Board, 278 Ill. App. 3d 79, 83, 662 N.E.2d 131 (1996).

It is undisputed that the sergeants' principal work here is substantially different from the

work of their subordinate officers. What is in dispute is whether the sergeants have authority to perform one of the 11 supervisory functions enumerated in section 3(r) and, if so, whether they consistently use independent judgment in performing the enumerated action. The Village conceded at oral argument that the only enumerated supervisory function that could apply here is the authority to discipline and recommend discipline. The Village relies on three cases: City of Freeport, Metropolitan Alliance of Police v. Illinois Labor Relations Board, 354 Ill. App. 3d 672, 680, 820 N.E.2d 1107 (2004), and Metropolitan Alliance of Police, Crest Hill, Sergeants Chapter No. 162 v. City of Crest Hill, 11 Pub. Employee Rep. (Ill.) par. 2006, No. S-RC-94-13 (ISLRB December 28, 1994) (hereinafter 11 Pub. Employee Rep. (Ill.) par. 2006).

In City of Freeport, our supreme court held police sergeants employed by the city of Freeport met the Act's definition of supervisors on evidence that those sergeants had authority to discipline patrol officers through verbal and written reprimands. City of Freeport, 135 Ill. 2d at 518-19. Verbal and written reprimands were documented and placed in personnel files where they could be considered in subsequent disciplinary proceedings. City of Freeport, 135 Ill. 2d at 519. The court said: "Including the [sergeants] in a bargaining unit with those they supervise might adversely affect the [sergeants'] willingness to discipline patrol officers." City of Freeport, 135 Ill. 2d at 519. The court held the Board erred in holding otherwise. City of Freeport, 135 Ill. 2d at 522.

The Board in Bellwood held that sergeants and lieutenants employed by the village of Bellwood were supervisors within the meaning of the Act because they possessed discretionary authority to choose between different disciplinary measures for minor infractions committed by

their subordinates.  Bellwood, 354 Ill. App. 3d at 677, 680.  The union argued on appeal to this court that the sergeants and lieutenants lacked the *discretion* to discipline in light of a department policy making it a violation for failure to report instances of wrongdoing by subordinates. Bellwood, 354 Ill. App. 3d at 680.  We rejected the union's argument, finding the directive to report did not affect the sergeants' discretion to discipline in the first instance.  Bellwood, 354 Ill. App. 3d at 683.  Bellwood was later cited as support for a finding that the authority to issue oral reprimands that are documented and considered in future disciplinary proceedings satisfied the Act's statutory standard for supervisory authority.  Metropolitan Alliance of Police, 362 Ill. App. 3d at 479.

Finally, in Crest Hill, the Board held sergeants employed by the city of Crest Hill were supervisors within the meaning of section 3(r) on evidence that the sergeants could choose between a verbal reprimand, a written report or a one-day suspension to discipline subordinates. Crest Hill, 11 Pub. Employee Rep. (Ill.) par. 2006.  Because there were no guidelines directing the sergeants on which disciplinary action to take, the Board held the sergeants exercised their disciplinary authority with independent judgment.  Crest Hill, 11 Pub. Employee Rep. (Ill.) par. 2006.

The Village also relies on the earlier decision in Hazel Crest I.  The ALJ there reviewed several indicia of supervisory authority, including the sergeant's authority to discipline their subordinates.  Here are the ALJ's findings of fact:

"Patrol [s]ergeants may train, counsel and give verbal reprimands[,] that are recorded[,] to subordinates *** [without] the approval of a superior officer.  For

10

example, if an officer is late, the [p]atrol [s]ergeant determines if that infraction warrants disciplinary action or merely counseling. If the [p]atrol [s]ergeant determines the officer has a good excuse, there is no documentation. A [p]atrol [s]ergeant might decide that training rather than counseling is appropriate. For example, if an officer did not follow the proper procedures for a driving under the influence arrest, the [p]atrol [s]ergeant could review the training for making a traffic stop with the officer. After two unrecorded warnings for the same infraction, the sergeant must issue a verbal reprimand, recorded in a disciplinary book kept in the Lieutenant's office. The date of the infraction, the nature of the infraction and signatures of the sergeant and the officer are recorded. *** A majority of verbal warnings are [for] a failure to show on time or report for duty in a timely manner. After the second verbal reprimand for the same infraction within a year, the sergeant writes a memo to the Lieutenant[,] indicating it is [the] third offense. Patrol sergeants may recommend more serious discipline than a verbal reprimand. When they do so, the Chief reviews the matter himself." Hazel Crest I, 18 Pub. Employee Rep. (Ill.) par. 2006, No. S-RC-01-061, at 42.

The ALJ concluded: "Inasmuch as a [p]atrol [s]ergeant can decide whether an infraction merits counseling, additional training, a verbal reprimand or a recommendation for more serious discipline, I conclude that [sergeants] exercise supervisory authority with independent judgment when they issue verbal reprimands that are recorded." Hazel Crest I, 18 Pub. Employee Rep. (Ill.) par. 2006, No. S-RC-01-061, at 42.

If the ALJ's holdings in Hazel Crest I were precedential, this would be an easy case. But they are not. See 80 Ill. Adm. Code §1200.135(b)(5), added at 27 Ill. Reg. 7365, eff. May 1, 2003 (where parties fail to file exceptions to an ALJ's recommended decision and order within the time prescribed, that order has no legal precedent and is binding only on the parties to that proceeding).

The Village does not argue that Hazel Crest I is binding on this court or that it was binding on the ALJ who decided this case. Rather, the Village argues Hazel Crest I is "persuasive" on the issue of whether the sergeants' authority to discipline satisfies the requirements of section 3(r) of the Act. The Board responds that Hazel Crest I cannot be used as persuasive authority because of the ALJ's conclusion here that there are enough changed circumstances within the department's hierarchical structure since Hazel Crest I to warrant a new look at the issue. The Board argues the Village waived its right to challenge this finding by failing to file an exception with the Board. But the changed circumstances alleged by the Union as grounds for reconsidering the issue did not affect the department's disciplinary policy. This is evidenced by the fact that the general order governing the department's disciplinary procedure had not changed since Hazel Crest I was decided. We also note that both parties agreed that the findings of fact with respect to discipline made in Hazel Crest I and quoted above remained applicable here.

But we need not decide whether Hazel Crest I constitutes persuasive authority or whether the Village has waived its right to rely on that order. Our supreme court in City of Freeport made clear that verbal reprimands are "discipline" within the meaning of section 3(r) if they are documented. City of Freeport, 135 Ill. 2d at 518-19; see also Metropolitan Alliance of Police, 362

Ill. App. 3d at 479.  So too is the power to recommend more severe disciplinary action.  City of Freeport, 135 Ill. 2d at 518-19.  The undisputed facts here show that the sergeants have authority to do both: issue verbal reprimands that are documented and recommend more severe disciplinary action.

The Board argues City of Freeport and Bellwood are distinguishable because the disciplinary action in those cases was documented in the personnel files of the individual officers.  We fail to see the significance of this distinction.  The verbal warnings here, although not placed in individual personnel files, are documented and can be considered in subsequent disciplinary proceedings.

The Board and Union maintain that the sergeants' authority to recommend greater disciplinary action is not discipline within the meaning of section 3(r) of the Act because the recommendations are subject to independent review by the deputy chief and the chief.  But a recommendation need not be rubber-stamped to constitute discipline within the meaning of section 3(r) of the Act.  City of Peru v. Illinois State Labor Relations Board, 167 Ill. App. 3d 284, 290, 521 N.E.2d 108 (1988).  This court has explained:

> "The term 'recommendation' implies some form of review by the person to whom the recommendation is made.  *** [I]n the paramilitary-style police environment, with its emphasis upon a structured chain of command, it would be highly unlikely that a disciplinary recommendation would not be subject to review by higher authority."  City of Peru, 167 Ill. App. 3d at 290.

The general order here makes clear that sergeants have authority to recommend discipline greater

13

than a verbal reprimand. There was also evidence of two instances where such recommendations were made. An independent review was performed in both instances and the recommendation was acted on in one. The ALJ concluded that evidence of only one instance in which a sergeant's recommendation was accepted "underscores [that the sergeants] are not consistently currently exercising their authority to give such recommendation." This conclusion is error as a matter of law. "It is the authority to use independent judgment in imposing discipline, rather than how often such discipline is imposed, [that] is important." City of Freeport, 135 Ill. 2d at 521.

The Board and the Union argue that sergeants do not use independent judgment in issuing verbal reprimands and, for this reason, do not meet the third prong under section 3(r) of the Act: that the alleged supervisor consistently uses independent judgment in performing or recommending one of the enumerated actions (City of Freeport, 135 Ill. 2d at 512). "An employee exercises 'independent judgment' when he makes a choice between two or more significant courses of action without substantial review by superiors." Metropolitan Alliance of Police, 362 Ill. App. 3d at 477-78. The Board and Union argue that the sergeants' authority to issue verbal reprimands is ministerial in nature and does not generally require the use of independent judgment. They cite to evidence in the record that the current chief requires sergeants to document all instances of wrongdoing and that verbal reprimands are most often issued for tardiness or absenteeism. But there was no evidence that the chief's directive affected the sergeants' discretion to choose between issuing a verbal reprimand and recommending greater disciplinary action based on the particular circumstances of the infraction. See Bellwood, 354 Ill. App. 3d at 683. Though verbal reprimands are most often issued in cases of tardiness or

14

absenteeism, such use does not impinge on a sergeants' authority to issue verbal reprimands for other infractions. The general order governing discipline does not restrict the use of verbal reprimands to instances of tardiness or absenteeism. Nor was there evidence that sergeants were restricted in their use of verbal reprimands.

The Village met its burden of showing that its sergeants are supervisors within the meaning of the Act: they have authority to issue verbal reprimands and recommend more severe disciplinary action and they consistently use independent judgment in exercising such authority. The Board's decision to the contrary based on the ALJ's findings of fact and conclusions of law is clearly erroneous.

Reversed.

WOLFSON and R.E. GORDON, JJ., concur.