Nos. 2—09—0800 & 2—09—0985 cons.
Opinion filed January 11, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF SANDWICH, | ) | Petition for Review of a Certification of |
| | ) | Representation by the Illinois Labor |
| Petitioner-Appellant, | ) | Relations Board, State Panel. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS LABOR RELATIONS BOARD, | ) | ILRB Case No. S—RC—09—061 |
| STATE PANEL, JACKIE GALLAGHER, its | ) | |
| Chairman, MICHAEL COLI, REX PIPER, | ) | |
| MICHAEL HADE, and ALBERT | ) | |
| WASHINGTON, its Members, JOHN F. | ) | |
| BROSNAN, its Executive Director, and | ) | |
| ILLINOIS FRATERNAL ORDER OF | ) | |
| POLICE LABOR COUNCIL, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

| | | |
|---|---|---|
| THE CITY OF SANDWICH, | ) | Petition for Review of a Certification of |
| | ) | Representation by the Illinois Labor |
| Petitioner-Appellant, | ) | Relations Board, State Panel. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS LABOR RELATIONS BOARD, | ) | ILRB Case No. S—RC—09—061 |
| STATE PANEL, JACKIE GALLAGHER, its | ) | |
| Chairman, MICHAEL COLI, REX PIPER, | ) | |
| MICHAEL HADE, and ALBERT | ) | |
| WASHINGTON, its Members, JOHN F. | ) | |
| BROSNAN, its Executive Director, | ) | |
| ILLINOIS FRATERNAL ORDER OF | ) | |
| POLICE LABOR COUNCIL, and DAVID | ) | |
| WICKSTER, its Executive Director, | ) | |
| | ) | |

Respondents-Appellees.                    )

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

Petitioner, the City of Sandwich (the City), petitions for review of the certification of representation and the decision and order of respondent Illinois Labor Relations Board, State Panel (Board), certifying respondent Illinois Fraternal Order of Police Labor Council (FOP) as the exclusive representative for collective bargaining purposes of all full-time sworn police officers of the rank of sergeant and below employed by the City.  We reverse the decision and order and vacate the certification of representation.

In October 2008, the FOP filed a petition with the Board, seeking to include City police officers with the rank of sergeant in its bargaining unit of police officers below the rank of sergeant. The City filed a response and a motion to dismiss, arguing that sergeants are supervisors pursuant to section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2008)) and that the City did not agree, pursuant to sections 3(s)(1) and (s)(2) of the Act (5 ILCS 315/3(s)(1), (s)(2) (West 2008)), to certify for collective bargaining purposes a unit consisting of both supervisors and nonsupervisors.  An administrative law judge denied the City's motion to dismiss and ultimately ordered a hearing.  On March 31, 2009, after a hearing, the administrative law judge issued a recommended decision and order, concluding that sergeants are not supervisors within the meaning of the Act and ordering a secret ballot election to be conducted among the City's sergeants. The City filed an exception to the recommended decision and order with the Board, which subsequently found

that the City's sergeants are "public employees within the meaning of the Act" and ordered a representation election.

We first must address this court's jurisdiction over this matter. The parties agree that the petition for review in case No. 2—09—0800, which was filed after the Board's decision was entered but before the representation election was held, was untimely. See *Chief Judge of the Sixteenth Judicial Circuit v. Illinois Labor Relations Board*, 275 Ill. App. 3d 853, 856 (1995) ("An order by the Board certifying a labor organization as the exclusive bargaining representative of employees in the bargaining unit is a final order that is reviewable directly by this court"); *City of Wood Dale v. Illinois Labor Relations Board*, 166 Ill. App. 3d 881, 887 (1988) (the unit-recognition process is "not complete until certification after an election"). Therefore we lack jurisdiction in appeal No. 2—09—0800, and we dismiss that appeal. However, the City timely filed its petition for review in case No. 2—09—0985 after the Board-ordered election, and we have jurisdiction over that appeal.

The City contends that the Board erred in finding that the City's sergeants are not supervisors pursuant to the Act. On administrative review of an agency decision, our review extends to all questions of fact and law presented in the record. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 516 (1990). A reviewing court may not rubber-stamp an administrative decision that it deems inconsistent with the statutory mandate or that frustrates the policy underlying the statute. *City of Freeport*, 135 Ill. 2d at 516.

This court may apply three standards of review when reviewing an agency's decision. On questions of fact, we deem the agency's findings and conclusions to be *prima facie* true and correct, and we will overturn such findings only if they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). A

determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210. Questions of law we review *de novo*, granting no deference to the agency. See *Cinkus,* 228 Ill. 2d at 210-11. Mixed questions of law and fact (where historical facts are established or undisputed, and the issue is whether those facts satisfy the statutory standard) are examined with a standard of review of clearly erroneous. *Cinkus,* 228 Ill. 2d at 211. An agency's decision is "clearly erroneous" when the reviewing court is left with a firm and definite conviction that the agency has committed a mistake. *Cinkus,* 228 Ill. 2d at 211.

Section 3(r) of the Act provides in relevant part:

" 'Supervisor' " is an employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding. In addition, in determining supervisory status in police employment, rank shall not be determinative. The Board shall consider, as evidence of bargaining unit inclusion or exclusion, the common law enforcement policies and relationships between police officer ranks and certification under applicable civil service law, ordinances, personnel codes, or Division 2.1 of Article 10 of the Illinois Municipal Code, but these factors shall not be the sole or predominant factors considered by the Board in determining police supervisory status." 5 ILCS 315/3(r) (West 2008).

A police officer meets the definition of supervisor contained in section 3(r) if he: (1) performs principal work substantially different from that of his subordinates; (2) has the authority in the interest of his employer to perform at least 1 of the 11 enumerated supervisory functions or to effectively recommend such action; and (3) consistently uses independent judgment in performing or recommending the enumerated actions. *City of Freeport*, 135 Ill. 2d at 505-06; *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 114 (2008). The existence of even one indicium of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory status. *Village of Hazel Crest*, 385 Ill. App. 3d at 114.

Here, the parties stipulated, and the Board found, that the sergeants perform principal work substantially different from that of peace officers with the rank of patrol officers. However, the Board found that the sergeants "do not possess the authority to perform any of the statutory indicia with the requisite independent judgment." Thus, the Board found the sergeants to be public employees within the meaning of the Act, and it ordered a representation election.

GENERAL BACKGROUND

At the hearing before the administrative law judge, Chief Richard Olson testified about the policies, procedures, and operations of the Sandwich police department. The department has 17 full-time police officers: the chief, 3 sergeants, and 13 patrol officers. The department also employs civilians as dispatchers, crossing guards, and records clerks. There is no other supervisory rank besides chief and sergeant. All officers other than chief are considered to be in the patrol division. The patrol division has three shifts: 6 a.m. to 4 p.m., 3 p.m. to 1 a.m., and 8 p.m. to 6 a.m. Olson was normally scheduled to work approximately 45 hours a week, during the 6 a.m. to 3 p.m. shift, 5 days

a week. However, "realistically" he worked closer to 55 hours per week. When he was not at the department office, a sergeant was the highest-ranking officer.

The sergeant was in charge of his shift. If no sergeant was present, for example because of vacation or sick leave, the senior patrol officer would run the shift. However, another sergeant would be on call in the event that something serious occurred. The chief was not on the on-call list. One sergeant was always in charge of each shift, whether at the department or on call.

The City also introduced into evidence several ordinances and policies. Section 42—36 of the Sandwich Municipal Code, which created the position of sergeant of police, states in part:

"(b) *Duties*

(1) A sergeant shall be responsible for the activities of the patrol officer on his assigned shift. The sergeant shall supervise the activities of his shift, seeing that the patrol officer:

a. Knows his zones of responsibility and patrols his zones.

b. Responds to calls for service promptly.

c. Completes all investigations promptly.

d. Collects and preserves evidence properly.

e. Makes proper arrests, searches and seizures.

f. Processes prisoners properly.

g. Signs and completes all reports properly.

h. Knows and understands the law.

i. Knows and understands the rules, regulations and orders of the police department.

j. Knows and understands the proper enforcement of the laws.

(2) In addition to his supervisory duties, a sergeant shall:

* * *

c. Investigate complaints against a patrol officer on his shift and make a written report to the chief." Sandwich Municipal Code ch. 42, §§42—36(b)(1), (b)(2)(c).

Department policy No. 102.2, "Police Sergeant Job Description," states:

"The work in this class involves the function of a shift supervisor. In this capacity, the primary responsibility is to provide direct day-to-day supervision of uniformed officers and telecommunicators assigned to a particular shift. The patrol Sergeant is also required to maintain the general patrol officer duties to augment the tasks of their assigned shift."

Policy No. 103.4 defines "Supervisor" as "any rank above patrolman."

Sergeant Joseph Spartz testified that Chief Olson was "in charge" 33% of the time. As one sergeant was currently on disability, sergeants were in charge 36% of the time and patrol officers were in charge 32% of the time. Spartz stated that he had issued verbal reprimands to patrol officers but that he did not document them if the behavior was corrected immediately. When he investigated a citizen complaint against a patrol officer or recommended some type of disciplinary action, he forwarded his report or recommendation to the chief, who made the decision. Olson did not always carry out Spartz's suggestions or requests.

Both Olson and Spartz also discussed several instances involving recommended disciplinary actions against patrol officers. Ultimately, Olson decided on the action to be taken. Sometimes the

discipline was harsher than that recommended by the sergeant; sometimes, it was more lenient. Other times, Olson followed the recommendation.

ANALYSIS

We first note that nowhere in its written decision and order did the Board even mention, let alone address, the City ordinance and department policies regarding the supervisory role of the sergeants. Pursuant to section 3(r) of the Act, the Board "*shall* consider, as evidence of bargaining unit inclusion or exclusion, the common law enforcement policies and relationships between police officer ranks and certification under applicable *** ordinances, [and] personnel codes." (Emphasis added.) 5 ILCS 315/3(r) (West 2008). While these factors "shall not be the sole or predominant factors considered by the Board in determining police supervisory status" (5 ILCS 315/3(r) (West 2008)), they nevertheless shall be considered. Here, there is no evidence that the Board considered the ordinance and policy code that clearly demonstrate the City's plan to utilize sergeants as supervisors.

In addition to the ordinance and policies, the very nature and reality of the department's staffing (again, not addressed in the Board's decision and order) indicate the supervisory nature of the position of sergeant. The hierarchy of the department is limited; there is only one intermediate level between chief and patrol officer—that of sergeant. As Chief Olsen testified, he was normally scheduled to work the 6 a.m. to 3 p.m. shift, 5 days a week, for a total of approximately 45 hours a week, although he "realistically" worked closer to 55 per week. When he was not at the department office—approximately 113 to 123 hours per week, or approximately 67% to 73% of the time—a sergeant was the highest-ranking officer, and the only officer with rank above patrol officer. It is unrealistic to conclude that patrol officers are unsupervised two-thirds to almost three-quarters of the

time. The chief relies on the sergeants to ensure that the patrol officers are properly performing their jobs; they represent the interests of the chief *vis-a-vis* the patrol officers. See *City of Freeport*, 135 Ill. 2d at 519.

The Act excludes supervisors from bargaining units that contain their subordinates, in order to avoid the conflict of interest that arises when supervisors, who must apply the employer's policies to the subordinates, are subject to control by the same union representing the subordinates. *City of Freeport*, 135 Ill. 2d at 517. It is clear from section 42—36(b)(1) of the Sandwich Municipal Code that a sergeant is responsible for all of the activities of the patrol officers on his shift. In addition, according to section 42—36(b)(2)(c), sergeants are required to "[i]nvestigate complaints against a patrol officer on his shift and make a written report to the chief." Sandwich Municipal Code ch. 42, §42—36(b)(2)(c). The Board determined that sergeants "do not have the authority to suspend or terminate subordinates, but recommend suspension or termination" and that "sergeants' disciplinary recommendations are not always followed." While true, these determinations truly miss the point of the policy underlying the statute. See *City of Freeport*, 135 Ill. 2d at 516.

The evidence in this case included various instances where the chief imposed disciplinary measures that were different (sometimes harsher, sometimes more lenient) from those recommended by the reporting sergeant. There was also at least one instance in which Olson imposed the discipline that had been recommended by the sergeant. However, the very fact that the sergeants are required to investigate complaints against patrol officers and submit reports to the chief shows the type of conflict of interest between sergeants and patrol officers that section 3(s)(1) of the Act seeks to prevent. Even if the sergeant does not ultimately impose the disciplinary action on a patrol officer, it is the sergeant who is required to bring the issue to the attention of the chief, who does impose the

discipline. The sergeants must investigate complaints, must report any violations of policy or inappropriate actions, and may recommend that disciplinary action be taken. The power to issue documented verbal reprimands or to recommend more severe disciplinary action has been found to be authority to discipline. See *City of Freeport*, 135 Ill. 2d at 518-19; *Village of Hazel Crest*, 385 Ill. App. 3d at 117. There is no less of a conflict of interest where the sergeants are required to investigate, report, and recommend discipline as opposed to ultimately imposing the discipline. A sergeant's independent judgment as to recommended discipline, as well as whether to even report an incident, might well be affected by bonds formed by common union brotherhood. See *City of Freeport*, 135 Ill. 2d at 519.

The Board's decision is clearly erroneous and misses the forest for the trees. By mechanically applying section 3(r) of the Act, the Board failed to consider the policy underlying the Act and its application to the City's police force as the force was designed and actually functions. We conclude that the City's police sergeants do supervise the City's patrol officers such that including the sergeants in the same bargaining unit as the patrol officers violated section 3(s)(1) of the Act. Therefore, we reverse the Board's decision and order, and we vacate the certification of representative issued on August 17, 2009.

Because we have concluded that the supervisory authority of the sergeants is supported by the indicium of discipline, we need not address the other supervisory functions. See *Village of Hazel Crest*, 385 Ill. App. 3d at 114.

CONCLUSION

For the foregoing reasons, case No. 2—09—0800 is dismissed; in case No. 2—09—0985, the agency's decision and order are reversed and the certification of representation is vacated.

Nos. 2—09—0800 & 2—09—0985 cons.

No. 2—09—0800, Appeal dismissed.

No. 2—09—0985, Reversed and certification of representation vacated.