# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**City of Champaign v. Madigan, 2013 IL App (4th) 120662**

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHAMPAIGN, an Illinois Municipal Corporation, Plaintiff-Appellant, v. LISA MADIGAN, in Her Official Capacity as Attorney General of the State of Illinois; PATRICK WADE; and THE NEWS-GAZETTE, INC., an Illinois Corporation, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket Nos. 4-12-0662, 4-12-0751 cons. |
| Filed | July 16, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Electronic communications sent and received during city council meetings from members of the council and the mayor pertaining to public business while the council members are functioning as a "public body" are subject to the Freedom of Information Act and defendant newspaper reporter was entitled to have such communications disclosed pursuant to his request, but the trial court erred in granting defendants' request for attorney fees, since defendants pursued their claim under section 9.5 of the Act by requesting a binding opinion from the Attorney General's Public Access Counselor, rather than a court action under section 11 of the Act, and section 9.5 does not provide for an award of attorney fees. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-680; the Hon. John Schmidt, Judge, presiding. |
| Judgment | No. 4-12-0662, Dismissed.<br>No. 4-12-0751, Affirmed in part and reversed in part. |

Counsel on
Appeal

Frederick C. Stavins, City Attorney, of Champaign (Laura Hall (argued), Assistant City Attorney of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow (argued), Assistant Attorney General, of counsel), for appellee Lisa Madigan.

Donald M. Craven and Esther J. Seitz, both of Donald M. Craven, P.C., of Springfield, for appellees Patrick Wade and News-Gazette, Inc.

Brian Day and Roger Huebner, both of Illinois Municipal League, of Springfield, *amicus curiae*.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and Holder White concurred in the judgment and opinion.

## OPINION

¶ 1     This case arises from defendant Patrick Wade's July 2011 request pursuant to the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/11(e) (West 2010)) for copies of electronic communications sent and received during city council meetings from members of the Champaign city council as well as the mayor of the City of Champaign (collectively, the City). The City partially denied Wade's request, explaining personal communications on privately owned electronic devices are not within the scope of FOIA, even when they relate to city business. Wade then sought administrative review of the City's denial with defendant, the office of the Illinois Attorney General's Public Access Counselor. Following that review, the Attorney General issued a binding opinion, finding texts and emails sent or received from a council member's personal electronic device during public meetings, concerning city council business, are by definition public records and thus subject to FOIA. The City sought administrative review in the circuit court, which affirmed the decision of the Attorney General.

¶ 2     The City appeals, arguing (1) the requested electronic communications are not public records as defined by FOIA; (2) public officials have a reasonable expectation of privacy in their personal communications; (3) the circuit court erred in awarding Wade attorney fees; and (4) the court did not have jurisdiction to decide Wade's counterclaim for injunctive relief. We affirm in part and reverse in part.

## I. BACKGROUND

On July 15, 2011, Wade, a reporter for defendant Champaign News-Gazette, filed a FOIA request with the City, seeking the following records:

"All electronic communications, including cellphone text messages, sent and received by members of the city council and the mayor during city council meetings and study sessions since (and including) May 3. Please note that this request applies to both city-issued and personal cellphones, city-issued or personal email addresses and Twitter accounts."

We note Wade's request broadly sought "[a]ll electronic communications" regardless of whether they were personal or public in nature. However, the parties have not directly raised the issue of the breadth of Wade's request in this case and have since agreed the FOIA request would not seek personal communications.

On July 22, 2011, the City partially denied Wade's request. According to the City, "Communications which pass through and are available on the City's electronic equipment are in the City's possession and control and, if not exempt, will be provided. However, communications of the Mayor and City Council members on privately owned equipment to private parties are not public records of public bodies and will not be provided."

On August 1, 2011, Wade sought administrative review of the City's denial with the Attorney General's Public Access Counselor. See 5 ILCS 140/9.5 (West 2010). Wade argued the following:

"The justification that communications on privately-owned devices, like cellphones, are not 'public records' simply because the individuals who own them are not the public body is inadequate. It is very possible and likely that city council members receive communications that aid in the elected officials' formulation of opinions and that consequently affect their votes. Those communications, particularly those that city council members receive during an ongoing meeting for which the public body is assembled, certainly are 'documentary materials pertaining to the transaction of public business ... being used by [or] received by ... any public body.' 5 ILCS 14/2(c). Regardless of their form, communications pertaining to the transaction of public business–being received by and used by individual members of an official body in their role as a member of that public body during an ongoing public meeting–should be public records."

On November 15, 2011, the Attorney General issued a binding opinion (Public Access Opinion No. 11-006; 2011 PAC 15916 (2011)), finding texts and emails sent or received on a council member's personal electronic device during public meetings are by definition public records and thus subject to FOIA.

On December 15, 2011, the City filed a complaint for administrative review of the Attorney General's decision in the circuit court.

On February 8, 2012, Wade filed a counterclaim for injunctive relief, requesting that once the circuit court affirms the administrative decision it also (1) issue an order compelling the City to release the requested records and (2) award reasonable attorney fees and costs.

¶ 10     On June 11, 2012, the circuit court denied the City's complaint for administrative review and affirmed the administrative decision, finding the Attorney General's opinion was not against the manifest weight of the evidence. The court also stated its ruling was "a final and appealable order." Wade never noticed his counterclaim for hearing.

¶ 11     On June 25, 2012, Wade and the News-Gazette (collectively Wade) filed a petition for attorney fees, arguing he was entitled to such fees and costs because he was a prevailing party in a case brought under FOIA. See 5 ILCS 140/11(i) (West 2010) ("If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorneys' fees and costs.").

¶ 12     On July 5, 2012, the City filed (1) a motion for judgment on the pleadings in order to resolve Wade's counterclaim, (2) a motion to dismiss Wade's petition for attorney fees, and (3) a motion for a written special finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 13     On July 11, 2012, the City filed a notice of appeal from the circuit court's dismissal of its complaint for administrative review, which was docketed as appellate court case No. 4-12-0662.

¶ 14     On July 18, 2012, the circuit court held a hearing on the parties' motions. In its July 27, 2012, written order, the court found the following:

"1. The Court grants [Wade] leave to file [his] counter-claim.

2. The Court grants [Wade's] petition for attorneys' fees and costs and awards attorney's fees and costs in the amount of $7,500.00.

3. The City's motion to dismiss the petition for attorneys' fees is denied.

4. The City's motion for judgment on the pleadings with respect to [Wade's] counter-claim is denied.

5. [Wade's] counter-claim for injunctive relief is allowed, because the requested electronic records should be released and the City is hereby ordered to release those records.

6. The court affirms its prior ruling that the Attorney General's binding opinion of November 15, 2011[,] was not against the manifest weight of the evidence and that the City's petition for Administrative Review is denied.

7. The Court stays enforcement of this order pending resolution of the appeal."

¶ 15     On August 9, 2012, the City filed a second notice of appeal from the circuit court's July 27, 2012, judgment. Specifically, the City appealed the following rulings of the circuit court:

"a. The Attorney General's binding opinion was not against the manifest weight of the evidence and the City's petition for administrative review was denied.

b. [Wade] was granted leave to file [his] counter-claim.

c. [Wade's] counter-claim for injunctive relief was allowed.

d. [Wade] was entitled to attorney fees in the amount of $7,500.00."

That appeal was docketed as appellate court case No. 4-12-0751.

¶ 16     On September 20, 2012, this court granted the City's motion to consolidate the appeals.

¶ 17    This appeal followed.

¶ 18                            II. ANALYSIS

¶ 19    On appeal, the City argues (1) the records Wade requested are not "public records" as defined by FOIA; (2) public officials have a reasonable expectation of privacy in their personal electronic communications; (3) the circuit court erred in awarding Wade attorney fees; and (4) the court did not have jurisdiction to decide Wade's counterclaim for injunctive relief.

¶ 20                        A. Appellate Jurisdiction

¶ 21    The Attorney General argues this court lacks jurisdiction over case No. 4-12-0662 because the circuit court's June 11, 2012, order left unresolved the issues of attorney fees and the counterclaim. While the court orally stated its ruling was "a final and appealable order," it did not make a formal finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) ("an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both"). Accordingly, we lack jurisdiction to hear the City's appeal in case No. 4-12-0662.

¶ 22    However, the Attorney General concedes this court *does* have jurisdiction over case No. 4-12-0751, in which the circuit court's July 27, 2012, order allowed attorney fees, granted the counterclaim, and affirmed its denial of the City's request for administrative review of the Attorney General's opinion. Thus, the court's order disposed of all of the parties' claims. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). As previously stated, the City's August 9, 2012, notice of appeal in case No. 4-12-0751 contained not just the attorney fees and counterclaim issues but also the court's denial of the City's request for administrative review. Accordingly, this court possesses jurisdiction to hear the claims presented in this appeal.

¶ 23                B. Whether Communications on Privately Owned
                    Electronic Devices Are Subject to FOIA

¶ 24    "A binding opinion issued by the Attorney General shall be considered a final decision of an administrative agency, for purposes of administrative review under the Administrative Review Law." 5 ILCS 140/11.5 (West 2010). In an appeal from a final administrative decision, the applicable standard of review depends on whether the issue involves a question of fact, a question of law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998).

¶ 25    An agency's findings and conclusions of fact are deemed *prima facie* true and correct and will be overturned only if they are against the manifest weight of the evidence. *City of Sandwich v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 1006, 1008, 942 N.E.2d 675, 678 (2011) (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008)). A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of*

-5-

*Sandwich*, 406 Ill. App. 3d at 1008, 942 N.E.2d at 678 (citing *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018).

¶ 26 "[W]here the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is " 'clearly erroneous.' " *Goodman v. Ward*, 241 Ill. 2d 398, 406, 948 N.E.2d 580, 585 (2011) (quoting *Cinkus*, 228 Ill. 2d at 211, 886 N.E.2d at 1018). "An agency's decision is 'clearly erroneous' when the reviewing court is left with a firm and definite conviction that the agency has committed a mistake." *City of Sandwich*, 406 Ill. App. 3d at 1008, 942 N.E.2d at 678.

¶ 27 However, our supreme court has also held "where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which [the] review is *de novo*." *Goodman*, 241 Ill. 2d at 406, 948 N.E.2d at 585 (citing *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423, 939 N.E.2d 368, 371 (2010)).

¶ 28 In this case, the underlying facts are not in dispute. The City has conceded "there were electronic communications which would be responsive to [Wade's] request if they were required to be produced." Thus, for purposes of our decision, we can assume individual council members sent or received electronic communications relating to city business on a personal electronic device during city council meetings. As a result, we are not reviewing a determination by the Attorney General concluding a particular communication was or was not subject to FOIA. That kind of decision would be subject to the clearly erroneous standard of review, with deference given to the administrative decision. What we are determining is whether communications relating to city business to and from individual city council members, on their personal electronic devices, constitute public records, a purely legal question. A dispute exists as to the Attorney General's interpretation of the statute. Thus, our review is *de novo*, which the supreme court has characterized as " 'independent and not deferential.' " (Internal quotation marks omitted.) *Goodman*, 241 Ill. 2d at 406, 948 N.E.2d at 585 (quoting *Hossfeld*, 238 Ill. 2d at 423, 939 N.E.2d at 371, quoting *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018). With regard to questions of statutory interpretation, our supreme court has stated:

"The interpretation of a statute presents a question of law that this court reviews *de novo*. [Citation.] Our primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the surest and most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. [Citation.] Where the language is clear and unambiguous, this court will apply the statute without further aids of statutory construction. [Citation.] In determining the plain meaning of the statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in passing it. [Citation.]" *People v. Chapman*, 2012 IL 111896, ¶ 23, 965 N.E.2d 1119.

¶ 29 The public policy underlying the General Assembly's adoption of FOIA is expressly set forth in section 1 of the Act as follows:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

This Act is not intended to cause an unwarranted invasion of personal privacy, nor to allow the requests of a commercial enterprise to unduly burden public resources, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information.
*  *  *

Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle. This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible and adherence to the deadlines established in this Act.
*  *  *

The General Assembly further recognizes that technology may advance at a rate that outpaces its ability to address those advances legislatively. To the extent that this Act may not expressly apply to those technological advances, this Act should nonetheless be interpreted to further the declared policy of this Act that public records shall be made available upon request except when denial of access furthers the public policy underlying a specific exemption." 5 ILCS 140/1 (West 2010).

In sum, the purpose of FOIA " 'is to open governmental records to the light of public scrutiny.' " *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405, 910 N.E.2d 85, 91 (2009) (quoting *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559 (1989)).

¶ 30    In this case, the City argues communications on privately owned electronic devices are not subject to FOIA as they are not "public records" because individual city council members are not themselves the "public body." Section 2(c) of FOIA defines "public records" as follows:

"[A]ll records, reports, forms, writings, letters, memoranda, books, papers, maps,

-7-

photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials *pertaining to the transaction of public business*, regardless of physical form or characteristics, having been *prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body*." (Emphases added.) 5 ILCS 140/2(c) (West 2010).

Thus, to qualify as a "public record" under the plain language of section 2(c) the communication must (1) "pertain[ ] to the transaction of public business" and must have been either (2) prepared by a public body, (3) prepared for a public body, (4) used by a public body, (5) received by a public body, (6) possessed by a public body, or (7) controlled by a public body.

¶ 31        While the Attorney General appears to be using the term "public business" and "public records" as if they mean the same thing, the statute treats the term "public business" as distinct from "public records" in that a communication "pertaining to the transaction of public business" is part of the definition of a "public record." See 5 ILCS 140/2(c) (West 2010). However, the statute does not define the term "public business." In construing a statute, courts give words their plain and ordinary meanings. *In re M.T.*, 221 Ill. 2d 517, 524, 852 N.E.2d 792, 797 (2006); *People v. Fabing*, 143 Ill. 2d 48, 54, 570 N.E.2d 329, 332 (1991) (absent contrary legislative intent, a court will assume the words used in a statute have their ordinary and popularly understood meanings when assessing the constitutionality of the statute). The Merriam-Webster's Dictionary contains such plain and ordinary definitions. The use of dictionary definitions to illustrate the commonly understood meaning of a term is well accepted. See *M.T.*, 221 Ill. 2d at 535, 852 N.E.2d at 802-03. The Merriam-Webster's Dictionary defines "public" as, *inter alia*, "of or relating to business or community interests as opposed to private affairs." Merriam-Webster's Collegiate Dictionary 941 (10th ed. 2000). Thus, to qualify as a public record a communication must first pertain to "business or community interests as opposed to private affairs." Indeed, FOIA is not concerned with an individual's private affairs. See 5 ILCS 140/1 (West 2010) ("This Act is not intended to cause an unwarranted invasion of personal privacy ***.").

¶ 32        Once the threshold determination of whether a communication pertains to "public business" is established, the next determination is whether that communication has been either (1) prepared by a public body, (2) prepared for a public body, (3) used by a public body, (4) received by a public body, (5) possessed by a public body, or (6) controlled by a public body. Thus, the question necessarily becomes: "What is a 'public body' for purposes of FOIA?"

¶ 33        The parties do not dispute a "public body" is subject to FOIA's disclosure requirements. The City also concedes the city council is a public body. However, the City argues the individual members of the city council are not themselves the "public body" and thus text and email messages "pertaining to public business," which were sent to or from an individual council member on his personal electronic devices are not, *inter alia*, prepared by or received by a public body. Section 5(a) of FOIA defines "public body" as follows:

"all legislative, executive, administrative, or advisory bodies of the State, state

-8-

universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees *** and subcommittees thereof." 5 ILCS 140/2(a) (West 2010).

Notably, section 2(a) does not include the individual *members* of those bodies in its definition of "public body."

¶ 34 On appeal, the Attorney General reiterates the following statement from its opinion: "Whether information is a 'public record' is not determined by where, how, or on what device that record was created; rather the question is whether that record was prepared by or used by one or more *members* of a public body in conducting the affairs of government." (Emphasis added.) However, the statute refers just to the "public body," not to "members" of the public body. Thus, the Attorney General's position in this regard depends on expanding the language of the statute by inserting the qualifier "members" of a public body into the statute.

¶ 35 In *Quinn v. Stone*, 211 Ill. App. 3d 809, 570 N.E.2d 676 (1991), the First District Appellate Court considered whether an individual alderman is a "public body" for purposes of FOIA. There, the plaintiff filed a FOIA request for records of an individual alderman's monthly travel expenditures. *Quinn*, 211 Ill. App. 3d at 810, 570 N.E.2d at 677. The plaintiff pursued her request for the records with the individual alderman. *Quinn*, 211 Ill. App. 3d at 810, 570 N.E.2d at 677. The trial court found the alderman was not himself a governmental body under the FOIA and thus not the proper recipient of the FOIA request. *Quinn*, 211 Ill. App. 3d at 811, 570 N.E.2d at 677.

¶ 36 On appeal, the plaintiff argued "the trial court erred in determining that defendant is not a 'public body' under [FOIA]." *Quinn*, 211 Ill. App. 3d at 810, 570 N.E.2d at 677. The appellate court affirmed, finding the plaintiff must pursue her records request with the head of the public body because the statutory definition of a "public body" did not include an individual alderman. *Quinn*, 211 Ill. App. 3d at 811, 570 N.E.2d at 677. The court concluded the "trial court properly dismissed plaintiff's complaint, however, on the basis that defendant[, an individual alderman,] is not a 'public body' as defined under the FOIA and is not the proper recipient of the request for records." *Quinn*, 211 Ill. App. 3d at 812, 570 N.E.2d at 678.

¶ 37 In its opinion, the Attorney General stated its decision was "completely consistent" with the appellate court's ruling in *Quinn*. Specifically, the Attorney General stated the following:

"The City's argument that, under *Quinn v. Stone*, the records generated on individual officers' private electronic devices are not public records is undermined by the facts of that case. Citing *Quinn*, the City argues that the Mayor and council members are not public bodies under FOIA and that electronic communications received from private citizens on their private electronic devices are therefore not subject to FOIA. Applying the facts in *Quinn* to these circumstances leads to the opposite conclusion.

In *Quinn*, the plaintiff filed suit under FOIA against an individual Chicago alderman to obtain records of the alderman's expenditures of monthly travel allowance funds. The appellate court rejected the appeal, stating:

[']Plaintiff here failed to pursue her request for these records to the right person.

-9-

Instead of suing defendant individually, she must pursue her remedy against the head of the public body, pursuant to the Act. The Act defines "head of the public body" as the "president, mayor, chairman, presiding officer, director, superintendent, manager, supervisor[,] or individual otherwise holding primary executive and administrative authority for the public body." ['] *Quinn*, 211 Ill. App. 3d at 812.

In essence, the court concluded that the records that the plaintiff was seeking were records of the city, not of the individual alderman; therefore, the records must be obtained from the city council. This decision is completely consistent with the conclusion that the records of the City officials in question pertaining to the transaction of public business are not records of the individual officials but records of the City." Public Access Opinion 11-006; 2011 PAC 15916 (2011).

Thus, the Attorney General reasoned *Quinn* stands for the proposition "the records of the City officials in question pertaining to the transaction of public business are not records of the individual officers but records of the City."

¶ 38 However, the question of what makes a communication a "record of the City," *i.e.*, a "public record," remains. As stated, to qualify as a "public record" under FOIA, a communication must (1) "pertain[ ] to the transaction of public business" and have either been (2) prepared by, (3) prepared for, (4) used by (5) received by, (6) possessed by, or (7) controlled by a public body. The Attorney General's opinion seemingly ignores the explicit statement in *Quinn* an individual alderman "is not a 'public body' as defined under FOIA." *Quinn*, 211 Ill. App. 3d at 812, 570 N.E.2d at 678.

¶ 39 On appeal, the Attorney General's argument depends on its reading *Quinn* "acknowledged that an alderman is a part of a public body" in that the plaintiff in *Quinn* "would have had a viable claim for the documents she sought" had she simply commenced her action against the city council. However, the First District in *Quinn* also specifically stated the following: "we do not in any way intend to decide whether or not [the] plaintiff has a right to the information requested." *Quinn*, 211 Ill. App. 3d at 812, 570 N.E.2d at 678.

¶ 40 In this case, we agree with the First District's view in *Quinn* an individual alderman is not a "public body" under FOIA. We recognize the Attorney General argues on appeal *Quinn* only answers the question of who is a proper defendant in a FOIA action. However, even in reading *Quinn* solely for the proposition individual aldermen cannot properly be served with FOIA requests, the underlying reasoning, *i.e.*, an individual alderman is not himself the public body, cannot be ignored. Indeed, an individual city council member, alone, cannot conduct the business of the public body. For example, a city council member is unable to individually convene a meeting, pass ordinances, or approve contracts for the city. Instead, a quorum of city council members is necessary to make binding decisions. See *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 367, 839 N.E.2d 558, 568 (2005) ("A 'quorum' is the number of assembled members that is necessary for a decision-making body to be legally competent to transact business.").

¶ 41 Under this interpretation, a message from a constituent "pertaining to the transaction of public business" received at home by an individual city council member on his personal electronic device would not be subject to FOIA. However, that communication would be

subject to FOIA if it was forwarded to enough members of the city council to constitute a quorum for that specific body, regardless of whether a personal electronic device, as opposed to a publicly issued electronic device, was used. At that point, it could be said the communication was "in the possession of a public body." However, as the City conceded, a communication to an individual city council member's *publicly issued* electronic device would be subject to FOIA because such a device would be "under the control of a public body." Thus, if that same individual city council member who received a message from a constituent on his personal electronic device forwards it to his publicly issued device, that message would be subject to FOIA as it would now be "under the control of a public body."

¶ 42        With that said, however, once the individual city council members have convened a city council meeting (or "study session"), it can reasonably be said they are acting in their collective capacity as the "public body" during the time the meeting is in session. Indeed, the city council cannot act unless it acts through its individual members during a meeting. As a result, it is not unreasonable to conclude communications "pertaining to the transaction of public business," which are sent to and received by city council members' personal electronic devices during a meeting are in the possession of the public body. Put another way, communications from an individual city council member's personal electronic devices do not qualify as "public records" *unless* they (1) pertain to public business, and were (2) prepared by, (3) prepared for, (4) used by, (5) received by, (6) possessed by, or (7) controlled by the "public body." Thus, if the communication, which pertains to the transaction of public business, was sent or received during the time a city council meeting was in session, *i.e.*, during the time the individual city council members were functioning collectively as the "public body," then the communication is a "public record" and thus subject to FOIA.

¶ 43        In this case, Wade requested "All electronic communications, including cellphone text messages, sent and received by members of the city council and the mayor *during city council meetings and study sessions* since (and including) May 3." (Emphasis added.) While Wade requested the communications from personally owned electronic devices, the parties agree the scope of Wade's request was limited to nonpersonal communications, *i.e.*, communications pertaining to public business, sent and received during the time the city council was in session. Because Wade's request was limited by subject and time, such communications would be responsive to the request. The City received communications from two city council members before deciding FOIA did not apply. The City provided 24 pages of communications collected from those two members. The City apparently withheld 11 pages of communications which were filed under seal with the Attorney General but not included in the record on appeal. For the reasons stated, communications "pertaining to public business" and sent to and from individual city council member's personal electronic devices during the time city council meetings (and study sessions) were convened should be turned over to the City's FOIA officer for review of what information, if any, should be exempted under section 7 of FOIA (5 ILCS 140/7(c) (West 2010)). Thereafter, the requested communications should be provided to Wade. To hold otherwise would allow members of a public body, convened as the public body, to subvert the Open Meetings Act (5 ILCS 120/1 to 7.5 (West 2010)) and FOIA requirements simply by communicating about city business during a city council meeting on a personal electronic device.

-11-

¶ 44 Finally, we note the language in the statute's preamble recognizes "technology may advance at a rate that outpaces its ability to address those advances legislatively." 5 ILCS 140/1 (West 2010). The instant cause of action presents just such a situation. If the General Assembly intends for communications pertaining to city business to and from an individual city council member's personal electronic device to be subject to FOIA in every case, it should expressly so state. It is not this court's function to legislate. Indeed, such issues are legislative matters best left to resolution by the General Assembly. We would encourage local municipalities to consider promulgating their own rules prohibiting city council members from using their personal electronic devices during city council meetings.

¶ 45                                              C. Counterclaim and Attorney Fees

¶ 46 On February 8, 2012, prior to the circuit court affirming the Attorney General's opinion, Wade filed a counterclaim for injunctive relief pursuant to section 11 of FOIA (5 ILCS 140/11(a) (West 2010)), requesting the circuit court (1) issue an order compelling the City to release the requested records and (2) award reasonable attorney fees and costs if it affirmed the administrative decision.

¶ 47 On June 11, 2012, the circuit court affirmed the Attorney General's administrative decision.

¶ 48 On June 25, 2012, Wade filed a petition pursuant to section 11(i) of FOIA (5 ILCS 140/11(i) (West 2010)), arguing he was entitled to attorney fees and costs because he was a prevailing party in a case brought under FOIA. Wade never noticed his counterclaim for hearing.

¶ 49 On July 5, 2012, the City filed (1) a motion for judgment on the pleadings in order to resolve Wade's counterclaim, and (2) a motion to dismiss Wade's petition for attorney fees. The City argued (1) Wade was not entitled to the relief sought in his counterclaim as a matter of law and (2) attorney fees are not recoverable in a request for review under section 9.5 of FOIA (5 ILCS 140/9.5 (West 2010)).

¶ 50 On July 18, 2012, the circuit court (1) granted Wade leave to file his counterclaim, (2) granted Wade's counterclaim for injunctive relief and ordered the City to release the records, and (3) awarded Wade $7,500 in attorney fees and costs.

¶ 51 On appeal, the City argues (1) Wade is not entitled to attorney fees and costs because he sought relief from the City's denial of his request for records under section 9.5 of FOIA (5 ILCS 140/9.5 (West 2010)), which does not provide for such fees, and (2) the circuit court erred in allowing Wade's counterclaim where it was not a permitted pleading when seeking relief under section 9.5 of FOIA. We agree.

¶ 52                                              1. *Wade's Attorney Fees Issue*

¶ 53 FOIA provides two distinct and mutually exclusive avenues for a requester to seek relief from a public body's denial of a FOIA request. Under section 9.5 of FOIA, a requester may request a binding opinion from the Attorney General's Public Access Counselor. See 5 ILCS 140/9.5 (West 2010) ("A person whose request to inspect or copy a public record is denied

by a public body *** may file a request for review with the Public Access Counselor established in the Office of the Attorney General ***."). Under section 11, a requester may opt to skip the administrative process altogether and proceed straight to court. See 5 ILCS 140/11(a), (b) (West 2010) ("Any person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief *** in the circuit court ***."). Here, it is undisputed Wade sought review of the City's denial under section 9.5 of FOIA, not section 11. However, unlike section 11, section 9.5 does not contain a provision allowing attorney fees and costs for requesters seeking administrative relief.

¶ 54    Section 11(i) states, in pertinent part, as follows: "If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding *under this Section*, the court shall award such person reasonable attorneys' fees and costs." (Emphasis added.) 5 ILCS 140/11(i) (West 2010). Wade points out the nondiscretionary nature of the "shall award" language, while ignoring the "under this Section" portion of the statute. Had the General Assembly intended the attorney fees to apply in all cases it would have used the term "Act" instead of "Section."

¶ 55    Under the "American Rule," each party typically pays its own attorney fees, and the winner is not entitled to collect those fees from the loser absent specific fee-shifting language. *City of Elgin v. All Nations Worship Center*, 373 Ill. App. 3d 167, 169, 868 N.E.2d 385, 387 (2007). The administrative review section of FOIA contains no fee-shifting language. Where the General Assembly has intended to provide fees in administrative review proceedings, it has specifically done so. See 775 ILCS 5/8A-104(G) (West 2010) (providing attorney fees to prevailing parties in administrative proceedings before the Illinois Human Rights Commission).

¶ 56    Under FOIA, the Attorney General, through the Public Access Counselor, can render an advisory opinion or a binding opinion. 5 ILCS 140/9.5(f) (West 2010). Advisory opinions are not subject to administrative review. *Brown v. Grosskopf*, 2013 IL App (4th) 120402, ¶ 11, 984 N.E.2d 1167 (citing 5 ILCS 140/11.5 (West 2010)). In amending FOIA and establishing the Attorney General's Public Access Counselor, the legislature sought to create an expeditious proceeding for the parties to obtain guidance and avoid having to bring a court action.

¶ 57    If at some point during the pendency of the Public Access Counselor's review process, a requester brings a FOIA claim in the circuit court for relief, the Public Access Counselor must not take any further action, *i.e.*, administrative review ceases. 5 ILCS 140/9.5(g) (West 2010). Here, however, review by the Public Access Counselor was completed, a binding opinion issued, and the City sought review of the binding opinion through the administrative review process. No judicial action pursuant to section 11 was brought by Wade.

¶ 58    We note counsel at oral argument stated, "we're only looking to recover *** attorney fees that were incurred before the circuit court" and "none of our attorney fees relate to the administrative process." However, this is not provided for by FOIA. While section 11.5 provides for administrative review of the Attorney General's opinion, it is a separate and distinct section from section 11(i). Section 11.5 does not provide for attorney fees. Compare 5 ILCS 140/11.5 (West 2010), with 5 ILCS 140/11(i) (West 2010). Under these facts, the

trial court erred in awarding Wade $7,500 in attorney fees and costs.

¶ 59                    2. *Wade's Counterclaim for Injunctive Relief*

¶ 60      The City argues Wade's section 11(a) counterclaim was not a permitted pleading under section 9.5 of FOIA. We agree.

¶ 61      As stated above, FOIA provides two different avenues for a requester to seek relief from a denial of a request for records. Under section 11(a), a requester who is denied access to public records by a public body "may file suit for injunctive or declaratory relief" in the trial court. 5 ILCS 140/11(a) (West 2010). Section 11(a) does not provide for injunctive relief during the administrative review process. In fact, under section 9.5(g), if, for whatever reason, a section 11 claim for injunctive relief is filed during the time the Attorney General is reviewing the case, the administrative portion ceases, *i.e.*, the Attorney General withdraws, and the case moves to the circuit court. 5 ILCS 140/9.5(g) (West 2010) ("If the requester files suit under Section 11 with respect to the same denial that is the subject of a pending request for review, the requester shall notify the Public Access Counselor, and the Public Access Counselor shall take no further action with respect to the request for review and shall so notify the public body."). In this case, Wade filed his claim for injunctive relief after the Attorney General issued its binding opinion and during the time the case was on administrative review. However, FOIA does not contemplate such parallel proceedings. In this context, Wade's counterclaim was not an appropriate pleading and should not have been granted.

¶ 62      Wade argues "[i]n the absence of that counterclaim there would be no enforcement mechanism" and the City would be free to ignore the circuit court's order to release the records. However, while the order to release the communications was stayed pending this appeal, there is no evidence to suggest the City will refuse to release the records. Moreover, if the City were to withhold the records, sections 11(g) and 11(j) provide enforcement mechanisms for FOIA's compliance. See 5 ILCS 140/11(g) (West 2010) ("In the event of noncompliance with an order of the court to disclose, the court may enforce its order against any public official or employee so ordered or primarily responsible for such noncompliance through the court's contempt powers."); 5 ILCS 140/11(j) (West 2010) ("If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence."). The trial court erred in allowing Wade's counterclaim for injunctive relief.

¶ 63                              III. CONCLUSION

¶ 64      For the reasons stated, we dismiss appeal No. 4-12-0662 for lack of jurisdiction. We affirm the portion of the circuit court's judgment in case No. 4-12-0751 affirming the Public Access Counselor's binding opinion. We reverse the part of the court's judgment allowing the counterclaim and awarding attorney fees.

-14-

¶ 65        No. 4-12-0662, Dismissed.

¶ 66        No. 4-12-0751, Affirmed in part and reversed in part.